**No. 12-3841**

# In the
# United States Court of Appeals
## for the Seventh Circuit

CYRIL B. KORTE, et al.,

*Plaintiffs-Appellants,*

v.

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-01072.
The Honorable **Michael J. Reagan**, Judge Presiding.

## BRIEF OF PLAINTIFFS-APPELLANTS

FRANCIS J. MANION
GEOFFREY R. SURTEES
AMERICAN CENTER FOR
  LAW AND JUSTICE
6375 New Hope Road
New Hope, Kentucky 40052
(502) 549-7020

ERIK M. ZIMMERMAN
AMERICAN CENTER FOR
  LAW AND JUSTICE
1000 Regent University Drive
Virginia Beach, Virginia 23464
(757) 226-2489

EDWARD L. WHITE  III
  *Counsel of Record*
AMERICAN CENTER FOR
  LAW AND JUSTICE
5068 Plymouth Road
Ann Arbor, Michigan 48105
(734) 662-2984

*Attorneys for Plaintiffs-Appellants,*
*Cyril B. Korte, Jane E. Korte* and *Korte and Luitjohan Contractors, Incorporated*

 

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 12-3841

Short Caption: **Cyril B. Korte, et al. vs. United States Department of Health and Human Services, et al.**

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

> [X]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.
>
> All the information on this form is being newly provided.

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Plaintiffs-Appellants, Cyril B. Korte, Jane E. Korte, and Korte & Luitjohan Contractors, Inc.

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

American Center for Law & Justice

(3)   If the party or amicus is a corporation:

i)   Identify all its parent corporations, if any; and

Korte & Luitjohan Contractors, Inc., is a family owned company and has no parents, trusts, subsidiaries, and/or affiliates that have issued shares or debt securities to the public.

ii)   list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature:  _/s/ Edward L. White III_                    Date:  December 18, 2012

Attorney's Printed Name:  Edward L. White III

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    Yes   _X_

Address:   _American Center for Law & Justice, 5068 Plymouth Road, Ann Arbor, Michigan 48105_

Phone Number:  734-662-2984          Fax Number:  734-302-1758          E-Mail Address:  ewhite@aclj.org

rev. 01/08 AK

# CIRCUIT RULE 26.1
# DISCLOSURE STATEMENT/NOTICE OF APPEARANCE

Appellate Court No: 12-3841

Short Caption: Cyril B. Korte, et al. vs. United States Department of Health
and Human Services, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

**[X]** PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

**No. (2) is new information; appearance of additional counsel for plaintiffs**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Plaintiffs-Appellants, Cyril B. Korte, Jane E. Korte, and Korte & Luitjohan Contractors, Inc.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

**Francis J. Manion,** American Center for Law & Justice_____

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

Korte & Luitjohan Contractors, Inc., is a family owned company and has no parents, trusts, subsidiaries, and/or affiliates that have issued shares or debt securities to the public.

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:  N/A

Attorney's Signature: */s/ Francis J. Manion*_____   Date: January 18, 2013

Attorney's Printed Name: Francis J. Manion_____

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    No

Address:  American Center for Law & Justice, 6375 New Hope Road, PO Box 60, New Hope, KY.  40052

Phone Number:  502-549-7020____    Fax Number:  502-549-5252_____

E-Mail Address:  fmanion@aclj.org

# CIRCUIT RULE 26.1
# DISCLOSURE STATEMENT/NOTICE OF APPEARANCE

Appellate Court No: 12-3841

Short Caption: Cyril B. Korte, et al. vs. United States Department of Health
and Human Services, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

**[X]** PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

**No. (2) is new information; appearance of additional counsel for plaintiffs**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Plaintiffs-Appellants, Cyril B. Korte, Jane E. Korte, and Korte & Luitjohan Contractors, Inc.

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

**Geoffrey R. Surtees,** American Center for Law & Justice_____

(3)   If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

Korte & Luitjohan Contractors, Inc., is a family owned company and has no parents, trusts, subsidiaries, and/or affiliates that have issued shares or debt securities to the public.

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:  N/A

Attorney's Signature:  */s/ Geoffrey R. Surtees*_____   Date: January 18, 2013

Attorney's Printed Name: Geoffrey R. Surtees_____

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).    No

Address:  American Center for Law & Justice, 6375 New Hope Road, PO Box 60, New Hope, KY.  40052

Phone Number:  502-549-7020_____   Fax Number:  502-549-5252_____

E-Mail Address: gsurtees@aclj.org

# CIRCUIT RULE 26.1
## DISCLOSURE STATEMENT/NOTICE OF APPEARANCE

Appellate Court No:     12-3841

Short Caption:          Cyril B. Korte, et al. vs. United States Department of
                        Health and Human Services, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.

[**X**]     PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.

**Number 2 is new information: appearance of additional counsel for Plaintiffs.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

        Plaintiffs-Appellants Cyril B. Korte, Jane E. Korte, and Korte & Luitjohan Contractors, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Erik M. Zimmerman, American Center for Law and Justice
(*Admission Application Forthcoming*)

(3)    If the party or amicus is a corporation:

i)    Identify all its parent corporations, if any; and

Korte & Luitjohan Contractors, Inc., is a family-owned company and has no parents, trusts, subsidiaries, and/or affiliates that have issued shares or debt securities to the public.

ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock.

N/A.

Attorney's Signature:    /s/ Erik M. Zimmerman    Date:  January 24, 2013

Attorney's Printed Name:  Erik M. Zimmerman

Please indicate if you are Counsel of Record for the above listed parties pursuant to Circuit Rule 3(d).  No

Address:    American Center for Law and Justice
           1000 Regent University Drive
           Virginia Beach, VA 23464

Phone Number:    757-226-2489    Fax Number:    757-226-2836

E-Mail Address:    ezimmerman@aclj.org

TABLE OF CONTENTS

DISCLOSURE STATEMENTS.................................................................................i

TABLE OF AUTHORITIES.................................................................................. xi

JURISDICTIONAL STATEMENT ......................................................................1

   I.   Jurisdiction of the District Court .............................................................1

   II.  Jurisdiction of the Court of Appeals ......................................................2

STATEMENT OF THE ISSUES ..........................................................................3

STATEMENT OF THE CASE ..............................................................................5

STATEMENT OF THE FACTS............................................................................8

   I.   The Mandate, Its Exceptions, and Its Penalties.......................................8

   II.  Cyril and Jane Korte and Korte & Luitjohan Contractors, Inc.............11

SUMMARY OF THE ARGUMENT....................................................................15

   I.   The Mandate Substantially Burdens Plaintiffs' Religious
      Exercise.....................................................................................................15

   II.  Defendants Cannot Satisfy Strict Scrutiny..............................................17

   III.  The Mandate Violates Plaintiffs' Free Exercise Rights..........................18

   IV. The Balance of Harms Tips in Plaintiffs' Favor.....................................19

STANDARD OF REVIEW ...................................................................19

ARGUMENT.......................................................................................21

I.    Plaintiffs Are Likely to Succeed on Their RFRA Claim ......................23

      A.    The Mandate substantially burdens Plaintiffs' religious
            exercise.................................................................................25

      B.    There is no business exception under RFRA or the Free
            Exercise Clause ....................................................................37

      C.    Applying the Mandate to Plaintiffs does not withstand
            strict scrutiny ......................................................................46

            1.    The government cannot demonstrate a compelling
                  need to apply the Mandate to Plaintiffs...................48

            2.    The Mandate is not the least restrictive means of
                  achieving any compelling governmental interest.................56

II.   Plaintiffs are Likely to Succeed on Their Free Exercise Claim.............60

      A.    The Mandate is not generally applicable ........................................61

      B.    The Mandate is not religiously neutral...........................................62

III.  Plaintiffs Satisfy the Remaining Injunction Factors...............................64

CONCLUSION ...................................................................................66

STATEMENT CONCERNING ORAL ARGUMENT .......................................68

CERTIFICATE OF COMPLIANCE ....................................................69

CIRCUIT RULE 30(d) CERTIFICATE ................................................................ 70

CERTIFICATE OF SERVICE ................................................................................ 71

APPENDIX

# TABLE OF AUTHORITIES

## CASES

*ACLU v. Alvarez*,
  679 F.3d 583 (7th Cir. 2012) ...............................................................................65

*Am. Pulverizer Co. v. U.S. Dep't of Health & Human Servs.*,
  2012 U.S. Dist. LEXIS 182307 (W.D. Mo. Dec. 20, 2012) .........................22, 52

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983)...............................................................................................56

*Annex Medical, Inc. v. Sebelius*,
  2013 U.S. Dist. LEXIS 2699 (D. Minn. Jan. 8, 2013)........................................23

*Autocam Corp. v. Sebelius*,
  2012 U.S. App. LEXIS 26736 (6th Cir. Dec. 28, 2012).....................................23

*Autocam Corp. v. Sebelius*,
  2012 U.S. Dist. LEXIS 184093 (W.D. Mich. Dec. 24, 2012) ............................23

*Brown v. Entm't Merchs. Ass'n*,
  131 S. Ct. 2729 (2011)....................................................................... 17, 48, 54-56

*Church of Lukumi Babalu Aye v. City of Hialeah*,
  508 U.S. 520 (1993)........................................................... 18, 47, 49, 52, 60-61, 63

*Citizens United v. FEC*,
  130 S. Ct. 876 (2010)..................................................................................7, 40, 42

*City of Boerne v. Flores*,
  521 U.S. 507 (1997)...............................................................................................47

*Civil Liberties for Urban Believers v. City of Chicago*,
   342 F.3d 752 (7th Cir. 2003) ...............................................34

*Conestoga Wood Specialties Corp. v. Sebelius*,
   2012 U.S. Dist. LEXIS 4449 (E.D. Pa. Jan. 11, 2013) ...........................23

*Consol. Edison Co. v. Pub. Serv. Comm'n*,
   447 U.S. 530 (1980) ...............................................48

*Conyers v. Abitz*,
   416 F.3d 580 (7th Cir. 2005) ...............................................49, 59

*EEOC v. Sunbelt Rentals, Inc.*,
   521 F.3d 306 (4th Cir. 2008) ...............................................43

*EEOC v. Townley Eng'g & Mfg. Co.*,
   859 F.2d 610 (9th Cir. 1988) ...............................................40

*Elrod v. Burns*,
   427 U.S. 347 (1976) ...............................................65

*Emp't Div. v. Smith*,
   494 U.S. 872 (1990) ...............................................61

*Ezell v. City of Chicago*,
   651 F.3d 684 (7th Cir. 2011) ...............................................20

*First Nat'l Bank v. Bellotti*,
   435 U.S. 765 (1978) ...............................................40

*Fowler v. Rhode Island*,
   345 U.S. 67 (1953) ...............................................64

*Frazee v. Emp't Sec. Dep't,*
  489 U.S. 829 (1989) .................................................................................64

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
  546 U.S. 418 (2006) ........................................................... 25, 47-49, 53

*Grayson v. Schuler,*
  666 F.3d 450 (7th Cir. 2012) ..........................................................37, 39

*Grote Indus. LLC v. Sebelius,*
  2012 U.S. Dist. LEXIS 181965 (S.D. Ind. Dec. 27, 2012) ..................................23

*Hobbie v. Unemployment Appeals Comm'n,*
  480 U.S. 136 (1987) .................................................................................37

*Hobby Lobby Stores v. Sebelius,*
  2012 U.S. LEXIS 9594 (Dec. 26, 2012) ..................................................23

*Hobby Lobby Stores v. Sebelius,*
  2012 U.S. App. LEXIS 26741 (10th Cir. Dec. 20, 2012).........................7, 23, 31

*Hobby Lobby Stores v. Sebelius,*
  2012 U.S. Dist. LEXIS 164843 (W.D. Okla. Nov. 19, 2012)...........................23

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
  132 S. Ct. 694 (2012) ..............................................................................39

*Illinois Cent. R.R. Co. v. Bhd.,*
  398 F.2d 973 (7th Cir. 1968) ................................................................ 65-66

*Joelner v. Vill. of Wash. Park,*
  378 F.3d 613 (7th Cir. 2004) ................................................................66

*Koger v. Bryan,*
   523 F.3d 789 (7th Cir. 2008) ....................................................16, 27-28, 47, 58-59

*Legatus v. Sebelius,*
   2012 U.S. Dist. LEXIS 156144 (E.D. Mich. Oct. 31, 2012) ..............................22

*McClure v. Sports & Health Club, Inc.,*
   370 N.W.2d 844 (Minn. 1985) ...........................................................................40

*Michigan v. U.S. Army Corps of Eng'rs,*
   667 F.3d 765 (7th Cir. 2011) ........................................................................ 19-20

*Mohamad v. Palestinian Auth.,*
   132 S. Ct. 1702 (2012) .......................................................................................38

*Monaghan v. Sebelius,*
   2012 U.S. Dist. LEXIS 182857 (E.D. Mich. Dec. 30, 2012) ..............................23

*Monell v. Dep't of Social Servs.,*
   436 U.S. 658 (1978) ...........................................................................................38

*Nelson v. Miller,*
   570 F.3d 868 (7th Cir. 2009) .......................................................................25, 27

*Newland v. Sebelius,*
   2012 U.S. Dist. LEXIS 104835 (D. Colo. July 27, 2012).................. 22, 50-52, 58

*NLRB v. Catholic Bishop of Chicago,*
   440 U.S. 490 (1979) ...........................................................................................64

*O'Brien v. U.S. Dep't of Health & Human Servs.,*
   2012 U.S. App. LEXIS 26633 (8th Cir. Nov. 28, 2012)....................................22

*O'Bryan v. Bureau of Prisons*,
  349 F.3d 399 (7th Cir. 2003) ...................................................17, 49

*Petra Presbyterian Church v. Vill. of Northbrook*,
  489 F.3d 846 (7th Cir. 2007) ................................................34

*Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*,
  699 F.3d 962 (7th Cir. 2012) ................................................20

*Primera Iglesia Bautista Hispana v. Broward Cnty.*,
  450 F.3d 1295 (11th Cir. 2006) ............................................40

*Riley v. Nat'l Fed'n of Blind*,
  487 U.S. 781 (1988) ............................................................59

*St. John's United Church of Christ v. City of Chicago*,
  502 F.3d 616 (7th Cir. 2007) ...........................................27, 54

*Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New
  Berlin*, 396 F.3d 895 (7th Cir. 2005) ..................................27

*Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*,
  2012 U.S. Dist. LEXIS 182942 (E.D. Mo. Dec. 31, 2012) ................22

*Sherbert v. Verner*,
  374 U.S. 398 (1963) ...........................................24-25, 27-28, 44, 47, 49

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ............................................40

*Stuller v. Steak N Shake Enters.*,
  695 F.3d 676 (7th Cir. 2012) ...........................................20, 60

*Thomas v. Review Bd.*,
  450 U.S. 707 (1981)............................................................ 15, 32-33, 44

*Thompson v. W. States Med. Ctr.*,
  535 U.S. 357 (2002)..........................................................................55

*Triune Health Grp. v. U.S. Dep't of Health & Human Servs.*,
  No. 1:12-cv-06756, slip op. (N.D. Ill. Jan. 3, 2013)...........................................22

*Tyndale House Publ'rs v. Sebelius*,
  2012 U.S. Dist. LEXIS 163965 (D.D.C. Nov. 16, 2012) .............22, 30-31, 51-52

*United States  v. Indianapolis Baptist Temple*,
  224 F.3d 627 (7th Cir. 2000) ...........................................................29

*United States v. Israel*,
  317 F.3d 768 (7th Cir. 2003) ...........................................................55

*United States v. Lee*,
  455 U.S. 252 (1982)..........................................................................44

*United States v. NCR Corp.*,
  688 F.3d 833 (7th Cir. 2012) ...........................................................19

*United States v. Playboy Entm't Grp., Inc.*,
  529 U.S. 803 (2000)..........................................................................59

*United States v. Robel*,
  389 U.S. 258 (1967)..........................................................................56

*Univ. of Great Falls v. NLRB*,
  278 F.3d 1335 (D.C. Cir. 2001).........................................................64

*Vision Church v. Vill. of Long Grove*,
  468 F.3d 975 (7th Cir. 2006) .............................................................................27

*Wisconsin v. Yoder*,
  406 U.S. 205 (1972)...................................................... 24, 26-28, 44, 49

CONSTITUTIONAL PROVISION

U.S. Const. amend. I ................................................................. 1, *passim*

STATUTES

Administrative Procedure Act,
  5 U.S.C. §§ 500 *et seq.* ......................................................................1, 6

Patient Protection and Affordable Care Act,
  Pub. L. No. 111-148 ...................................................... 3, 11, 50-51, 60

Religious Freedom Restoration Act,
  42 U.S.C. §§ 2000bb *et seq.* ................................................. 1, *passim*

1 U.S.C. § 1...............................................................................................38

26 U.S.C. § 1132........................................................................................11

26 U.S.C. § 1185d .....................................................................................11

26 U.S.C. § 4980D.....................................................................................11

26 U.S.C. § 4980H .....................................................................................11

26 U.S.C. § 4980H(c)(2)(A) ......................................................................11

28 U.S.C. § 1292(a)(1) ........................................................................ 2-3

28 U.S.C. § 1331 .................................................................................1

28 U.S.C. § 1343(a)(4) ........................................................................1

28 U.S.C. § 1346(a)(2) ........................................................................1

28 U.S.C. § 1361 .................................................................................1

42 U.S.C. § 300gg-13(a)(4) ................................................................8

42 U.S.C. § 2000bb(b) ......................................................................24

42 U.S.C. § 2000bb-1(a) ..............................................................24, 38

42 U.S.C. § 2000bb-1(b) ..................................................................24

42 U.S.C. § 2000cc-5(7)(A), *incorporated by* 42 U.S.C. § 2000bb-2(4) ...............24

42 U.S.C. § 18011 .......................................................................10, 50

215 Ill. Comp. Stat. § 5/356z.4 .......................................................14

745 Ill. Comp. Stat. § 70/2 .........................................................14, 41

745 Ill. Comp. Stat. § 70/3(a) .........................................................14

745 Ill. Comp. Stat. § 70/3(e) .........................................................14

745 Ill. Comp. Stat. § 70/3(f) .........................................................14

745 Ill. Comp. Stat. § 70/11.2 ........................................................14

REGULATIONS

26 C.F.R. § 54.9815-1251T ......................................................................10

29 C.F.R. § 2590.715-1251 ......................................................................10

45 C.F.R. § 147.130 ...................................................................................9

45 C.F.R. § 147.130(a)(1)(iv) ....................................................................9

45 C.F.R. § 147.130(a)(1)(iv)(B) .............................................................10

45 C.F.R. § 147.140 ............................................................................10, 50

75 Fed. Reg. 34538 ..................................................................................10

75 Fed. Reg. 41726 ............................................................................10, 52

76 Fed. Reg. 46621 ..................................................................................35

77 Fed. Reg. 8725 ..........................................................................9, 35, 50

77 Fed. Reg. 16501 ..................................................................................36

RULES

Circuit R. 26.1 ..............................................................................................i

Circuit R. 30(a) ........................................................................................70

Circuit R. 30(b) ........................................................................................70

Circuit R. 30(d) ........................................................................................70

Circuit R. 34(f)........................................................................................68

Fed. R. App. P. 4 ......................................................................................2

Fed. R. App. P. 26.1 ...................................................................................i

Fed. R. App. P. 32(a)(5)............................................................................69

Fed. R. App. P. 32(a)(6)............................................................................69

Fed. R. App. P. 32(a)(7)(B)........................................................................69

Fed. R. App. P. 32(a)(7)(B)(iii) ..................................................................69

Fed. R. App. P. 34(a) ................................................................................68

OTHER AUTHORITIES

*Application of the New Health Reform Provisions of Part A of Title
  XXVII of the PHS Act to Grandfathered Plans*,
    http://www.dol.gov/ebsa/pdf/grandfatherregtable.pdf.........................10, 52

Becket Fund for Religious Liberty, *HHS Mandate Information Central*,
  http://www.becketfund.org/hhsinformationcentral/ ...................................22

Cong. Research Serv., RL 7-5700, *Private Health Insurance Provisions
  in PPACA* (May 4, 2012) .............................................................10, 50

*Contraception in America, Unmet Needs Survey, Executive Summary*,
  http://www.contraceptioninamerica.com/downloads/Executive_
  Summary.pdf ........................................................................................54

Dep't of Health & Human Servs., *Guidance on the Temporary Enforcement Safe Harbor* (2012), http://cciio.cms.gov/resources/files/Files2/02102012/20120210-Preventive-Services-Bulletin.pdf ......... 35-36

Guttmacher Institute, *Facts on Publicly Funded Contraceptive Services in the United States,* May 2012, http://www.guttmacher.org/pubs/fb_contraceptive_serv.html ....................................................................58

Health Res. & Servs. Admin., *Women's Preventive Services: Required Health Plan Coverage Guidelines,* http://www.hrsa.gov/womensguidelines/...............................................................................9

Office of Women's Health, Federal Drug Administration, *Birth Control Guide* (Oct. 19, 2012), http://www.fda.gov/downloads/forconsumers/byaudience/forwomen/freepublications/ucm282014.pdf.........................................................9

*Statistics about Business Size (including Small Business) from the U.S. Census Bureau,* http://www.census.gov/econ/smallbus.html .......................53

Writings of Thomas Jefferson: Replies to Public Addresses: To the Society of the Methodist Episcopal Church at New London, Conn., on Feb. 4, 1809 (Monticello ed. 1904)...................................21

JURISDICTIONAL STATEMENT

I.  Jurisdiction of the District Court

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action against agencies and officials of the United States based on claims arising under the United States Constitution, particularly the First Amendment, and under the laws of the United States, particularly the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.* ("RFRA") and the Administrative Procedure Act, 5 U.S.C. §§ 500 *et seq.* The district court also had subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(4) because this is a civil action to secure equitable or other relief under an Act of Congress providing for the protection of civil rights (RFRA), and pursuant to 28 U.S.C. § 1346(a)(2) because it is a civil action against the United States based on the Constitution, Acts of Congress, and regulations of executive departments. Lastly, the district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1361 because the district court may compel officers and agencies of the United States to perform a duty owed Plaintiffs.

## II.  Jurisdiction of the Court of Appeals

This Court has jurisdiction over this appeal because the order of the district court, from which this appeal is taken, denied Plaintiffs' motion for a preliminary injunction. 28 U.S.C. § 1292(a)(1); App. 1.[1]/

This appeal was timely filed. Fed. R. App. P. 4. The district court entered its order denying Plaintiffs' motion for a preliminary injunction on December 14, 2012, App. 1, and Plaintiffs filed their notice of interlocutory appeal from that order on December 17, 2012. DCT Doc. 55.

The district court's order denying Plaintiffs' motion for a preliminary injunction dealt with the following claims raised in Plaintiffs' complaint: Count I (Violation of the Religious Freedom Restoration Act) and Count II (Violation of the Federal Free Exercise Clause). App. 5; DCT Doc. 2. Still pending in the district court are the remaining claims raised in Plaintiffs' complaint: Count III (Violation of the Federal Establishment Clause), Count

---

[1]/ References in this brief to "App.," "DCT Doc.," "CTA Doc.," and "Pg." or "Pp." are to the Appendix to this brief, the district court's docket entries, this Court's docket entries, and the pages within this brief respectively.

IV (Violation of the Federal Free Speech Clause), and Count V (Violation of

the Administrative Procedure Act). App. 5; DCT Doc. 2.

Although three claims remain pending in the district court, the district

court's order denying Plaintiffs' motion for a preliminary injunction based

on their RFRA and Free Exercise Clause claims was immediately

appealable by Plaintiffs pursuant to 28 U.S.C. § 1292(a)(1). Moreover, the

district court has stayed all proceedings, as of December 28, 2012, pending

the resolution of this appeal. DCT Doc. 63.

## STATEMENT OF THE ISSUES

Federal regulations enacted pursuant to the Patient Protection and

Affordable Care Act, Pub. L. No. 111-148 (March 23, 2010) (hereafter "the

Affordable Care Act") require many employers, under pain of penalty, to

include in their employee health benefit plans coverage for contraceptives,

including abortion-inducing drugs, sterilization, and related patient

education and counseling (hereafter "the Mandate"). Plaintiffs Cyril and

Jane Korte own the controlling interest in Plaintiff K & L Contractors, Inc.

(hereafter "K&L"). Plaintiffs' Catholic religious beliefs specifically forbid

them from paying for or providing these products and services, directly or indirectly, as the challenged Mandate requires them to do. The district court denied Plaintiffs' motion for a preliminary injunction, and a motions panel of this Court thereafter granted Plaintiffs' emergency motion for an injunction pending appeal. App. 23, 28. The issues presented are:

1.  Whether the district court erred in holding that the Mandate does not substantially burden Plaintiffs' religious exercise, and also erred in declining to apply strict scrutiny to the Mandate, when the Mandate requires Plaintiffs to choose between taking actions that violate the tenets of their religion or paying ruinous penalties for refusing to take those actions.

2. Whether Defendants can meet their high burden under RFRA of demonstrating that the Mandate is necessary to further a compelling governmental interest, and is the least restrictive means of doing so, when Defendants have exempted millions of Americans from the Mandate's requirements and several alternative means of furthering the government's

interests exist that would not substantially burden Plaintiffs' religious exercise.

3. Whether the district court erred in holding that the Mandate is a neutral law of general applicability that does not violate Plaintiffs' rights under the Free Exercise Clause of the First Amendment.

4. Whether the balance of harms tips in Plaintiffs' favor to warrant the grant of a preliminary injunction.

## STATEMENT OF THE CASE

This case arises from the enactment of a Mandate, which requires Plaintiffs to provide and pay for an employee health plan that includes coverage, without cost-sharing, for all Food and Drug Administration-approved contraceptive methods, including abortion-inducing drugs, sterilization procedures, and related education and counseling. Plaintiffs' Catholic religious beliefs and ethical guidelines dictate that it is immoral to use, provide, or facilitate the use of such goods and services. App. 31-41.

On October 9, 2012, Plaintiffs brought suit alleging that the Mandate violates their rights under RFRA and under the Free Exercise, Free Speech,

and Establishment Clauses of the First Amendment; Plaintiffs also alleged

that the Mandate violates the Administrative Procedure Act. DCT Doc. 2.

The following day, October 10, 2012, Plaintiffs filed a motion for a

preliminary injunction based upon their RFRA and Free Exercise claims,

preserving their other claims for further proceedings. DCT Docs. 6, 7.

The district court heard the motion on December 7, 2012, and denied the

motion on December 14, 2012. App. 5, 22; DCT Doc. 65. The court held that

Plaintiffs had not established a likelihood of success on the merits of their

RFRA claim because they did not show that the Mandate substantially

burdens their religious exercise. App. 17-22. The district court also

determined that Plaintiffs had not established a reasonable likelihood of

success on the merits of their Free Exercise Clause claim because the

Mandate is a neutral law of general applicability that does not

impermissibly burden Plaintiffs' religious exercise. App. 12-16.

Plaintiffs filed their notice of interlocutory appeal on December 17, 2012,

DCT Doc. 55, and on the next day, December 18, 2012, Plaintiffs filed an

emergency motion for an injunction pending appeal with this Court based on their RFRA claim alone. CTA Doc. 4.

On December 28, 2012, a motions panel of this Court, in a 2-to-1 decision, granted Plaintiffs' motion, concluding that Plaintiffs had established a reasonable likelihood of success on their RFRA claim and had established irreparable harm, tipping the balance of equities in their favor. App. 23-28. In that order, Judges Flaum and Sykes wrote, in relevant part:

> [T]he government's primary argument is that because K & L Contractors is a secular, for-profit enterprise, no rights under RFRA are implicated at all. This ignores that Cyril and Jane Korte are also plaintiffs. Together they own nearly 88% of K & L Contractors. It is a family-run business, and they manage the company in accordance with their religious beliefs. This includes the health plan that the company sponsors and funds for the benefit of its nonunion workforce. That the Kortes operate their business in the corporate form is not dispositive of their claim. *See generally Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876 (2010). The contraception mandate applies to K & L Contractors as an employer of more than 50 employees, and the Kortes would have to violate their religious beliefs to operate their company in compliance with it.

> The government also argues that any burden on religious exercise is minimal and attenuated, relying on a recent decision by the Tenth Circuit in *Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294 [2012 U.S. App. LEXIS 26741] (10th Cir. Dec. 20, 2012). . . . [T]he Tenth Circuit denied an injunction pending appeal, noting that "the particular burden of which plaintiffs complain is that funds, which plaintiffs

will contribute to a group health plan, might, after a series of independent decisions by health care providers and patients covered by [the corporate] plan, subsidize *someone else's* participation in an activity condemned by plaintiff[s'] religion." *Id.* at 7. With respect, we think this misunderstands the substance of the claim. The religious-liberty violation at issue here inheres in the *coerced coverage* of contraception, abortifacients, sterilization, and related services, *not*— or perhaps more precisely, *not only*—in the later purchase or use of contraception or related services.

App. 26-27. Judge Rovner dissented. App. 28-30.

On December 28, 2012, the district court stayed all proceedings pending the resolution of this appeal. DCT Doc. 63.

## STATEMENT OF THE FACTS

### I. The Mandate, Its Exceptions, and Its Penalties

The Affordable Care Act requires non-exempt group health plans to provide coverage for preventative care and screening for women without cost-sharing in accordance with guidelines created by the Health Resources and Services Administration. 42 U.S.C. § 300gg-13(a)(4); DCT Doc. 7 at 4. These guidelines include, among other things, "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive

capacity."[2]/ FDA-approved contraceptive methods include emergency contraception (such as "Plan B" and "Ella"), diaphragms, oral contraceptive pills, and intrauterine devices.[3]/

In February 2012, Defendants finalized an interim rule requiring all group health plans to provide coverage for all FDA-approved contraceptive methods and sterilization procedures as well as patient education and counseling about those services. 45 C.F.R. § 147.130; DCT Doc. 7 at 4. This Mandate applies to all non-exempt employers once their group health plans are renewed on or after August 1, 2012; as discussed herein, non-compliance will lead to significant annual fines and penalties. 45 C.F.R. § 147.130(a)(1)(iv); 77 Fed. Reg. 8725, 8726-28; DCT Doc. 7 at 4-5.

The Mandate does not apply to all employers because many have been exempted. For example, grandfathered health plans, that is, plans in

---

[2]/ Health Res. & Servs. Admin., *Women's Preventive Services: Required Health Plan Coverage Guidelines,* http://www.hrsa.gov/womensguidelines/ (last visited Jan. 24, 2013).

[3]/ Office of Women's Health, Federal Drug Administration, *Birth Control Guide* 6-19 (Oct. 19, 2012), http://www.fda.gov/downloads/forconsumers/ byaudience/forwomen/freepublications/ucm282014.pdf. (last visited Jan. 24, 2013); DCT Doc. 2 at 2; DCT Doc. 7 at 4; App. 33, 39.

existence on March 23, 2010, that have not undergone any of a defined set of changes, are exempt from compliance with the Mandate. *See* 26 C.F.R. § 54.9815-1251T; 29 C.F.R. § 2590.715-1251; 45 C.F.R. § 147.140; DCT Doc. 7 at 4-5. The government describes the rules for grandfathered health plans as preserving a "right to maintain existing coverage." 42 U.S.C. § 18011; 45 C.F.R. § 147.140; 75 Fed. Reg. 34538, 34562, 34566; DCT Doc. 65 at 17.[4]/ Defendant HHS estimates that "98 million individuals will be enrolled in grandfathered group health plans in 2013." 75 Fed. Reg. 41732; DCT Doc. 7 at 5. Although grandfathered plans are exempt from the Mandate, they are subject to many other provisions of the Affordable Care Act.[5]/

Non-profit "religious employers," as defined at 45 C.F.R. § 147.130(a)(1)(iv)(B), are also exempt from the Mandate. DCT Doc. 7 at 5. In

---

[4]/ "Existing plans may continue to offer coverage as grandfathered plans in the individual and group markets. . . . Enrollees could continue and renew enrollment in a grandfathered plan *indefinitely*." Cong. Research Serv., RL 7-5700, *Private Health Insurance Provisions in PPACA* (May 4, 2012) (emphasis added); DCT Doc. 26 at 4.

[5]/ 75 Fed. Reg. 34538, 34542; *Application of the New Health Reform Provisions of Part A of Title XXVII of the PHS Act to Grandfathered Plans*, http://www.dol.gov/ebsa/pdf/grandfatherregtable.pdf (last visited Jan. 24, 2013); DCT Doc. 65 at 4, 19.

addition, employers with fewer than fifty full-time employees have no

obligation to provide an employee health plan under the Affordable Care

Act and can bypass the Mandate by not providing a plan. 26 U.S.C. §

4980H(c)(2)(A); DCT Doc. 7 at 5.

A non-exempt employer that provides a health plan that does not

comply with the Mandate will be subject to penalties of $100 per day

($36,500 or $36,600 annually) for each employee who is offered non-

compliant insurance, 26 U.S.C. § 4980D, as well as potential enforcement

lawsuits, 26 U.S.C. §§ 1132, 1185d; DCT Doc. 7 at 5, 8-9. Moreover, non-

exempt employers that have fifty or more full-time employees and that fail

to provide any employee health plan are subject to annual penalties of

$2,000 for each full-time employee, not counting thirty of them. 26 U.S.C. §

4980H; DCT Doc. 7 at 5.

II.  Cyril and Jane Korte and Korte & Luitjohan Contractors, Inc.

Plaintiff K&L is a family-owned construction contractor serving Central

and Southern Illinois for over fifty years. App. 31, 37. Plaintiffs Cyril and

Jane Korte own a controlling interest in K&L, and they set all policies

governing the conduct of the company. *Id.* Cyril and Jane Korte adhere to the teachings, values, and mission of the Catholic Church, including the Church's teachings regarding the sanctity of human life from conception to natural death. App. 32, 38. They believe that actions intended to end an innocent human life by abortion are gravely sinful. *Id.* They also adhere to the Catholic Church's teachings regarding the immorality of contraception and sterilization. *Id.*

Cyril and Jane Korte seek to manage and operate K&L in a way that reflects their Catholic faith. *Id.* Based on their religious beliefs, the Kortes have established ethical guidelines for K&L stating that the company will not arrange for, pay for, provide, facilitate, or otherwise support employee health coverage of contraceptives, sterilization, abortion, abortion-inducing drugs, or related education and counseling (except in limited circumstances that do not present a conflict with Plaintiffs' faith). App. 33, 36, 39.

K&L has approximately ninety full-time employees: about seventy employees belong to unions and about twenty are non-union employees.

App. 32, 38. The union employees have health insurance coverage through their unions, over which Plaintiffs have no control; thus, K&L provides a group health insurance plan for only its approximately twenty non-union employees. *Id.* Like other non-cash benefits provided by K&L, Cyril and Jane Korte consider the provision of employee health insurance to be an integral component of furthering the company's mission and values. *Id.*

The Kortes discovered in or about August 2012 that K&L's then-existing group health plan included coverage for contraceptives, sterilization, and abortion, an error inconsistent with Plaintiffs' religious beliefs. App. 33, 39. Plaintiffs thereafter began investigating ways to obtain a group plan that would be consistent with the Kortes' Catholic faith and K&L's ethical guidelines by not causing Plaintiffs to arrange for, pay for, provide, or otherwise support coverage for contraceptives, sterilization, abortion, or related education and counseling. *Id.*

Because K&L is subject to the Mandate at issue in this case (as of January 1, 2013, when their group health plan came up for renewal), Plaintiffs filed this action in October 2012 and requested a preliminary injunction that

13

would allow them to offer a health plan that would not cause them to violate their religious beliefs and that would be consistent with the company's ethical guidelines. DCT Docs. 2, 6, 7. The injunction pending appeal issued by this Court presently protects Plaintiffs' rights, App. 23, but, without continued injunctive relief, the Mandate will require K&L to provide coverage, without cost-sharing, for contraceptives, including abortion-inducing drugs, sterilization, and related patient education and counseling, in violation of Plaintiffs' religious beliefs and ethical guidelines. App. 34-35, 40-41. If Plaintiffs fail to comply with the Mandate, they will incur approximately $730,000 in penalties every year, an amount that would ruin K&L as well as the Kortes' personal finances. App. 5, 25.[6]/

---

[6]/ Although the State of Illinois requires coverage for outpatient contraceptive services and drugs in individual and group health insurance policies, 215 Ill. Comp. Stat. § 5/356z.4, Plaintiffs are exempted from that mandate by the Illinois Health Care Right of Conscience Act. App. 5, n.10; 745 Ill. Comp. Stat. §§ 70/2, 70/3(a), (e)-(f), 70/11.2.

## SUMMARY OF THE ARGUMENT

I.  The Mandate Substantially Burdens Plaintiffs' Religious Exercise

The district court reversibly erred in denying Plaintiffs' motion for a preliminary injunction. Plaintiffs have a reasonable likelihood of success on the merits of their RFRA claim, and the district court erred in holding that the Mandate does not substantially burden Plaintiffs' religious exercise. Pp. 21-60.

The Mandate substantially burdens the religious exercise of both the Kortes and K&L because their Catholic religious beliefs and ethical guidelines specifically forbid them from paying for or providing, whether directly or indirectly, products and services that the challenged Mandate requires them to directly pay for and provide. Thus, the Mandate requires Plaintiffs to take actions that violate their religious faith in order to avoid ruinous penalties for non-compliance. The Mandate, therefore, "put[s] substantial pressure on [Plaintiffs] to modify [their] behavior and to violate [their] beliefs," *Thomas v. Review Board*, 450 U.S. 707, 717-18 (1981), and "bears direct, primary, and fundamental responsibility for rendering"

15

Plaintiffs' ability to refrain from engaging in immoral conduct "effectively impracticable." *Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008); Pp. 21-46.

The district court incorrectly concluded that the substantiality of the burden imposed upon Plaintiffs' religious exercise is dependent upon the actions of third parties—employees who may decide to use the objectionable products and services for which Plaintiffs must provide and pay. But, as the motions panel of this Court correctly noted, "[t]he religious-liberty violation at issue here inheres in the *coerced coverage* of contraception, abortifacients, sterilization, and related services, *not*—or perhaps more precisely, *not only*—in the later purchase or use of contraception or related services." App. 26-27; Pp. 25-37.

In addition, RFRA's protections extend to the Kortes as individuals and to K&L as a corporation. Each Plaintiff is a "person" whose religious exercise has been substantially burdened by the Mandate. Like the Free Exercise Clause of the First Amendment, the protections of RFRA extend broadly to any religious exercise of *a person* (including corporate persons) and are not limited to only protecting the free exercise of *a religious person*.

16

For purposes of the substantial burden imposed by the Mandate, the interests of the Kortes and K&L "are virtually indistinguishable." App. 10. Business owners who desire to operate their businesses in accordance with the tenets of their religious faith do not entirely forfeit their religious freedom with respect to their business operations. Pp. 37-46.

## II. Defendants Cannot Satisfy Strict Scrutiny

Because the Mandate substantially burdens Plaintiffs' religious exercise, Defendants must prove both that substantially burdening Plaintiffs' religious exercise is necessary to further a compelling governmental interest and that the Mandate is the least restrictive means of doing so (that is, Defendants must satisfy strict scrutiny). *See O'Bryan v. Bureau of Prisons*, 349 F.3d 399, 401 (7th Cir. 2003). Defendants cannot meet this high burden. The government cannot demonstrate that there is a "high degree of necessity" for the Mandate, that there is "an 'actual problem' in need of solving," and that substantially burdening Plaintiffs' religious exercise is "actually necessary to the solution." *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2738, 2741 (2011); Pp. 46-60.

Defendants cannot meet their burden because the government has exempted from the Mandate the employers of millions of employees and their families, bringing to mind the Supreme Court's observation that "a law cannot be regarded as protecting an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprohibited." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 547 (1993). In addition, the government could provide greater access to contraceptive services through various alternative means that would not substantially burden Plaintiffs' religious exercise (for example, by offering tax deductions or credits for the purchase of contraception services or expanding eligibility for already existing programs that provide free contraception). Pp. 46-60.

### III.  The Mandate Violates Plaintiffs' Free Exercise Rights

Moreover, the Mandate is not a neutral law of general applicability and, as such, Plaintiffs are reasonably likely to succeed on their Free Exercise Clause claim. A law is not generally applicable where, as here, countless millions of individuals and organizations are excused from compliance

with its requirements. The Mandate is not neutral because it discriminates among organizations based on a narrow definition of what makes an entity "religious enough" to warrant accommodation of its religious exercise. Pp. 60-64.

## IV.  The Balance of Harms Tips in Plaintiffs' Favor

Furthermore, Plaintiffs would be irreparably harmed in the absence of injunctive relief, as they would be forced to either forgo adherence to their religious faith or face ruinous financial penalties. App. 28. Neither the public interest nor Defendants' interests would be harmed by the issuance of an injunction. Thus, the balance of harms tips in Plaintiffs' favor. Pp. 64-66.

Consequently, this Court should reverse the decision of the district court and hold that Plaintiffs are entitled to preliminary injunctive relief. Pg. 66.

## STANDARD OF REVIEW

The district court's denial of Plaintiffs' motion for a preliminary injunction is reviewed for abuse of discretion. *United States v. NCR Corp.*, 688 F.3d 833, 837 (7th Cir. 2012); *Michigan v. U.S. Army Corps of Eng'rs*, 667

F.3d 765, 769 (7th Cir. 2011). Questions of law are reviewed de novo while questions of fact are reviewed for clear error. *U.S. Army Corps of Eng'rs*, 667 F.3d at 769; *Stuller v. Steak N Shake Enters.*, 695 F.3d 676, 678 (7th Cir. 2012).

"Plaintiffs seeking a preliminary injunction must establish that they are likely to succeed on the merits, they are likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in their favor, and issuing an injunction is in the public interest." *NCR Corp.*, 688 F.3d at 837. Plaintiffs need only show "some likelihood" or "a reasonable likelihood" of success on the merits under the first factor. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012); *Stuller*, 695 F.3d at 678; *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011). A "sliding scale analysis" is used to balance the harms and weigh the various factors. *Stuller*, 695 F.3d at 678.

ARGUMENT

No provision in our Constitution ought to be dearer to man than that which protects the rights of conscience against the enterprises of the civil authority.[z]/

The Mandate substantially burdens Plaintiffs' religious exercise because it poses them with a stark and inescapable dilemma: either arrange for and pay for contraceptive and sterilization procedures, including abortion-inducing drugs, in violation of their religious beliefs and the ethical standards of their company, or face crippling penalties imposed by the federal government. *See* App. 27 ("[T]he Kortes have established a reasonable likelihood of success on their claim that the contraception mandate imposes a substantial burden on their religious exercise.").

Defendants have decided not to impose this same choice upon thousands of other employers (some of whom share the same religious objection as Plaintiffs), leaving millions of employees and their families outside the requirements of the Mandate. This intentional, massive under-

---

[z]/ Writings of Thomas Jefferson: Replies to Public Addresses: To the Society of the Methodist Episcopal Church at New London, Conn., on Feb. 4, 1809 (Monticello ed. 1904) vol. XVI, pp. 331, 332.

inclusiveness illustrates that Defendants cannot meet their burden of proving that applying the Mandate to Plaintiffs is the least restrictive means of achieving a compelling governmental interest.

There are more than forty ongoing federal lawsuits (including the instant action) brought by both for-profit and non-profit employers seeking a religious exemption from the Mandate. *See* Becket Fund for Religious Liberty, *HHS Mandate Information Central*, http://www.becketfund.org/ hhsinformationcentral/ (last visited Jan. 24, 2013). At present, for-profit plaintiffs are protected by injunctions preventing application of the Mandate to them in nine cases,[8]/ while injunctive relief has been denied in

---

[8]/ App. 28 (granting injunction pending appeal); *O'Brien v. U.S. Dep't of Health & Human Servs.*, 2012 U.S. App. LEXIS 26633 (8th Cir. Nov. 28, 2012) (same); App. 42, *Triune Health Grp. v. U.S. Dep't of Health & Human Servs.*, No. 1:12-cv-06756, slip op. (N.D. Ill. Jan. 3, 2013) (granting preliminary injunction); *Am. Pulverizer Co. v. U.S. Dep't of Health & Human Servs.*, 2012 U.S. Dist. LEXIS 182307 (W.D. Mo. Dec. 20, 2012) (same); *Tyndale House Publ'rs v. Sebelius*, 2012 U.S. Dist. LEXIS 163965 (D.D.C. Nov. 16, 2012) (same); *Legatus v. Sebelius*, 2012 U.S. Dist. LEXIS 156144 (E.D. Mich. Oct. 31, 2012) (same); *Newland v. Sebelius*, 2012 U.S. Dist. LEXIS 104835 (D. Colo. July 27, 2012) (same); *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, 2012 U.S. Dist. LEXIS 182942 (E.D. Mo. Dec. 31, 2012) (granting
*(Footnote continues on following page.)*

five cases.[9]/

## I.  Plaintiffs Are Likely to Succeed on Their RFRA Claim

In denying Plaintiffs' motion for a preliminary injunction, the district court held that the Mandate does not substantially burden Plaintiffs' religious exercise. App. 17-21. This is a reversible error because the Mandate requires Plaintiffs to take direct actions that violate the tenets of their faith, with the threat of substantial penalties for non-compliance. The Mandate presents a classic example of a substantial burden upon religious exercise, which triggers the application of strict scrutiny under RFRA.

---

temporary restraining order); *Monaghan v. Sebelius*, 2012 U.S. Dist. LEXIS 182857 (E.D. Mich. Dec. 30, 2012) (same).

[9]/ *Hobby Lobby Stores v. Sebelius*, 2012 U.S. Dist. LEXIS 164843 (W.D. Okla. Nov. 19, 2012) (denying preliminary injunction), *appeal docketed*, 2012 U.S. App. LEXIS 26741 (10th Cir. Dec. 20, 2012) (denying injunction pending appeal), *and* 2012 U.S. LEXIS 9594 (Dec. 26, 2012) (Sotomayor, J., in chambers) (same); *Autocam Corp. v. Sebelius*, 2012 U.S. Dist. LEXIS 184093 (W.D. Mich. Dec. 24, 2012) (denying preliminary injunction), *appeal docketed*, 2012 U.S. App. LEXIS 26736 (6th Cir. Dec. 28, 2012) (denying injunction pending appeal); *Annex Medical, Inc. v. Sebelius*, 2013 U.S. Dist. LEXIS 2699 (D. Minn. Jan. 8, 2013) (denying preliminary injunction); *Grote Indus. LLC v. Sebelius*, 2012 U.S. Dist. LEXIS 181965 (S.D. Ind. Dec. 27, 2012) (same); *Conestoga Wood Specialties Corp. v. Sebelius*, 2012 U.S. Dist. LEXIS 4449 (E.D. Pa. Jan. 11, 2013) (denying preliminary injunction after granting TRO).

RFRA's purposes are to "restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened" and to "provide a claim or defense to persons whose religious exercise is substantially burdened by government." 42 U.S.C. § 2000bb(b). The general rule under RFRA is that the federal government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," 42 U.S.C. § 2000bb-1(a), and the term "exercise of religion" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A), *incorporated by* 42 U.S.C. § 2000bb-2(4).

RFRA provides an exception to this general rule for instances in which the federal government "demonstrates that application of the burden *to the person* (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b) (emphasis added). In other words, the

government must satisfy strict scrutiny. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006) (noting that RFRA imposes the "strict scrutiny test").

A. The Mandate substantially burdens Plaintiffs' religious exercise

Under RFRA, a law substantially burdens religious exercise when, among other things, a person is required to choose between (1) doing something his faith forbids or discourages (or not doing something his faith requires or encourages), and (2) incurring financial penalties, the loss of a government benefit, criminal prosecution, or other substantial harm. *See, e.g., Sherbert*, 374 U.S. at 404; *Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009) ("We have held that a prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition.").

For example, in *Sherbert*, the Supreme Court held that a state's denial of unemployment benefits to a Seventh-Day Adventist, whose religious beliefs prohibited her from working on Saturdays, substantially burdened her exercise of religion. The regulation

force[d] her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand. Governmental imposition of such a choice puts the same kind of burden upon the free exercise of religion as would a fine imposed against appellant for her Saturday worship.

374 U.S. at 404. Also, in *Yoder*, the Court held that a compulsory school-attendance law substantially burdened the religious exercise of Amish parents who refused to send their children to high school. The Court found the burden "not only severe, but inescapable," requiring the parents "to perform acts undeniably at odds with fundamental tenets of their religious belief." 406 U.S. at 218.

Similarly, this Court has observed:

[a] regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable. In determining when an exercise has become "effectively impracticable," it is helpful to remember that in the context of the Free Exercise Clause, the Supreme Court held that a government imposes a substantial burden on a person's beliefs when it put[s] substantial pressure on an adherent to modify his behavior and violate his beliefs.

*Koger*, 523 F.3d at 799 (citations and quotation marks omitted); *see also*

*Nelson*, 570 F.3d at 878; *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 997

(7th Cir. 2006).

This Court has also noted that a burden upon religious exercise need not

be insurmountable to be substantial:

> The plaintiff in the *Sherbert* case, whose religion forbade her to work
> on Saturdays, could have found a job that didn't require her to work
> then had she kept looking rather than giving up after her third
> application for Saturday-less work was turned down. But the
> Supreme Court held that the fact that a longer search would probably
> have turned up something didn't make the denial of unemployment
> benefits to her an insubstantial burden on the exercise of her religion.

*Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396

F.3d 895, 901 (7th Cir. 2005) (holding that a substantial burden was present

where a church faced delay, uncertainty, and expense by having to either

sell its land or restart the zoning approval process); *see also St. John's United*

*Church of Christ v. City of Chicago*, 502 F.3d 616, 632 (7th Cir. 2007)

("According to St. John's, . . . the City's plan to acquire and condemn the

cemetery is a 'sacrilege to [its] religious faith.' We accept those

representations.").

Here, Plaintiffs face an inescapable choice similar to the claimants in *Sherbert* and *Yoder*: they must either directly provide and pay for drugs and services that they believe are immoral (and thereby commit an immoral act) or suffer severe penalties for non-compliance with the Mandate. The Mandate is akin to the hypothetical "fine imposed against appellant for her Saturday worship" referenced in *Sherbert*, 374 U.S. at 404, and, as in *Yoder*, the Mandate requires Plaintiffs "to perform acts undeniably at odds with fundamental tenets of their religious belief." 406 U.S. at 218. Thus, contrary to the district court's decision, the Mandate bears "direct responsibility" for placing "substantial pressure" on Plaintiffs to take actions that violate their religious beliefs, which renders their religious exercise—refraining from immoral acts—effectively impracticable. *Koger*, 523 F.3d at 799.

The district court's statement that the Mandate will not be responsible "for rendering *the Kortes' adversity to abortifacients* effectively impracticable," App. 20 (emphasis added), incorrectly implies that Plaintiffs can avoid any substantial burden upon their religious exercise by simply demonstrating an "adversity to abortifacients" through other

28

means. As noted previously, however, a person's religious exercise may be substantially burdened *in one of two ways*: a law puts substantial pressure upon the person to (1) commit an act discouraged or forbidden by the person's faith, *or* (2) refrain from an act encouraged or required by the person's faith. *Cf. United States v. Indianapolis Baptist Temple*, 224 F.3d 627, 629 (7th Cir. 2000) ("The Free Exercise Clause . . . provides considerable . . . protection for the ability to practice (through the performance or non-performance of certain actions) one's religion."). The district court essentially recharacterized Plaintiffs' religious obligation as a general responsibility to voice an objection to abortifacients, with which the Mandate would not substantially interfere. But, as explained in the Kortes' declarations, the Mandate *requires Plaintiffs to take actions forbidden by their faith*. App. 31-41.

The district court, moreover, incorrectly held that the burden on Plaintiffs' religious exercise was "too distant" to be substantial because employees may not *use* the objectionable goods and services. App. 20 ("It appears that Plaintiffs' objection presupposes that an insured will actually

use the contraception coverage. . . . [A]t that point the connection between the government regulation and the burden upon the Kortes' religious beliefs is too distant to constitute a substantial burden.").

This lawsuit, however, is *not* based upon an objection to something that *an employee* may do; rather, the Mandate *requires Plaintiffs to do something* that they believe is gravely immoral: directly arrange for, pay for, and provide coverage for objectionable goods and services. *See* App. 18 ("Plaintiffs emphasized that they do not seek to impose their religious beliefs upon others; rather, they just do not want to be forced to foster or sponsor a plan that is contrary to their religious beliefs.").

Here, the Mandate attempts to lower the cost of covered goods and services for some individuals (employees of non-exempted employers who are not part of a grandfathered plan and their families) by shifting a significant portion of their cost *to employers* through the medium of employer-provided insurance. The anticipated lower cost to employees is expressly contracted for and paid for by employers at the government's command. As the district court in *Tyndale House Publishers v. Sebelius*

correctly noted in a similar context, "[b]*ecause it is the coverage*, not just the use, *of the contraceptives at issue to which the plaintiffs object*, it is irrelevant that the use of the contraceptives depends on the independent decisions of third parties. And even if this burden could be characterized as 'indirect,' the Supreme Court has indicated that indirectness is not a barrier to finding a substantial burden." 2012 U.S. Dist. LEXIS 163965 at *44 (citing *Thomas*, 450 U.S. at 718) (emphasis added).

Similarly, the motions panel that granted Plaintiffs an injunction pending appeal properly explained:

> The government also argues that any burden on religious exercise is minimal and attenuated, relying on a recent decision by the Tenth Circuit in *Hobby Lobby Stores, Inc.*, No. 12-6294 [2012 U.S. App. LEXIS 26741] (10th Cir. Dec. 20, 2012). . . [T]he Tenth Circuit denied an injunction pending appeal, noting that "the particular burden of which plaintiffs complain is that funds, which plaintiffs will contribute to a group health plan, might, after a series of independent decisions by health care providers and patients covered by [the corporate] plan, subsidize *someone else's* participation in an activity condemned by plaintiff[s'] religion." *Id.* at 7. With respect, we think this misunderstands the substance of the claim. The religious-liberty violation at issue here inheres in the *coerced coverage* of contraception, abortifacients, sterilization, and related services, *not*—or perhaps more precisely, *not only*—in the later purchase or use of contraception or related services.

App. 26-27.

Furthermore, the district court's holding that the burden imposed upon Plaintiffs' religious exercise is insubstantial also conflicts with the Supreme Court's decision in *Thomas*. There, a Jehovah's Witness was denied unemployment benefits because he quit his job after he was transferred to a department that produced tanks for the military. 450 U.S. at 710. His religious beliefs "specifically precluded him from producing or directly aiding in the manufacture of items used in warfare." *Id.* at 711. In holding that the claimant's religious exercise was substantially burdened by the denial of unemployment benefits, the Court explained:

> Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith . . . thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial.

*Id.* at 717-18.

The claimant's religious objection in *Thomas* is analogous to Plaintiffs' religious objection here. As in *Thomas*, Plaintiffs' religious faith dictates that the direct facilitation and encouragement of immoral behavior is

32

prohibited. App. 32-35, 38-41. The substantiality of the burden in *Thomas* was not negated by the independent decisions of various individuals as to whether and how the objectionable weapons would be used. Likewise, the substantiality of the burden that the Mandate imposes upon Plaintiffs is not dependent upon an employee's decision whether to use the objectionable goods and services that Plaintiffs are required to make readily available to them without cost-sharing. Just as the denial of unemployment benefits in *Thomas* "put[] substantial pressure on [the claimant] to modify his behavior and to violate his beliefs" by participating in the manufacture of objectionable goods, the significant penalties for non-compliance with the Mandate put substantial pressure on Plaintiffs to modify their behavior and violate their beliefs by directly facilitating the provision of objectionable goods and services.[10]/

---

[10]/ Also, Plaintiffs' religious objection is entirely different from an objection to how employees choose to spend their salaries. Paying money *with no strings attached* as compensation for an employee's work, which the employee may decide to save, donate, or spend on one of a thousand different goods or services, is completely different from Plaintiffs being forced to enter a contract and pay money for the express purpose of

*(Footnote continues on following page.)*

33

In addition, the substantial pressure that the Mandate places on Plaintiffs to violate their faith makes this case distinguishable from various land use cases in which this Court concluded that no substantial burden was present; there is a significant difference between experiencing some delay and cost associated with securing proper approval to operate an assembly use of real property and a legal requirement to take direct action that one's religious faith declares to be immoral. *See, e.g., Petra Presbyterian Church v. Vill. of Northbrook,* 489 F.3d 846, 851 (7th Cir. 2007) (noting that "[w]hen there is plenty of land on which religious organizations can build churches [or convert existing buildings] in a community, the fact that they are not permitted to build everywhere does not create a substantial burden"); *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir. 2003) (holding that the plaintiff churches' religious exercise was not substantially burdened where each church successfully located within Chicago's city limits and the legal requirements did not "render

---

making *a specific good or service that they morally object to* readily available to others without cost-sharing.

impracticable the use of real property in Chicago for religious exercise, much less discourage churches from locating or attempting to locate in Chicago"). As such, the district court clearly erred in holding that the Mandate does not substantially burden Plaintiffs' religious exercise.

The conclusion that the Mandate substantially burdens Plaintiffs' religious exercise is bolstered by Defendants' acknowledgment of the significant impact that the Mandate has upon many employers' religious exercise. Recognizing that paying for or providing contraceptive and sterilization services would conflict with "the religious beliefs of certain religious employers," Defendants have given a class of employers, *e.g.*, churches and their auxiliaries, a wholesale exemption from complying with the Mandate. 76 Fed. Reg. 46621, 46623; 77 Fed. Reg. 8725-28. In addition, the government has provided a temporary enforcement safe harbor for any employer, group health plan, or group health insurance issuer that is sponsored by a non-profit organization that meets certain criteria.[11]/

---

[11]/ Dep't of Health & Human Servs., *Guidance on the Temporary Enforcement Safe Harbor* 3 (2012), http://cciio.cms.gov/resources/files/

*(Footnote continues on following page.)*

Moreover, Defendants are considering ways of "accommodating non-exempt, non-profit religious organizations' religious objections to covering contraceptive services [while] assuring that participants and beneficiaries covered under such organizations' plans receive contraceptive coverage without cost sharing." 77 Fed. Reg. 16501, 16503. Defendants are also considering whether "for-profit religious employers with [religious] objections should be considered as well," *id.* at 16504, which is a tacit acknowledgment that the Mandate may substantially burden the religious exercise of some for-profit corporations and their owners (such as Plaintiffs).

It must be noted that the district court (and Judge Rovner in her dissent from the grant of Plaintiffs' motion for an injunction pending appeal) chided Plaintiffs for *inadvertently* covering contraceptives and sterilization in K&L's health plan, an error that Cyril and Jane Korte discovered in August 2012. App. 18, 29-30, 33, 39. To change their group plan to correct

Files2/02102012/20120210-Preventive-Services-Bulletin.pdf (last visited Jan. 24, 2013).

this error, however, Plaintiffs needed an injunction. DCT Docs. 6, 7; App. 33-35, 39-41. Defendants have not challenged the sincerity of Plaintiffs' religious beliefs, App. 18, and, in any event, a religious adherent's assertion of a claim that a law substantially burdens his religious exercise cannot be rejected on the ground that the claimant's actions have not, for one reason or another, always aligned with his currently-expressed religious tenets. *See, e.g., Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 144 (1987) (holding that one may raise a religious objection to conduct that one previously engaged in without objection); App. 27 ("[I]t is well-established that a religious believer does not, by inadvertent nonobservance, forfeit or diminish his free-exercise rights.") (citing *Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012)).

B. There is no business exception under RFRA or the Free Exercise Clause

Although the district court correctly held that both the Kortes and K&L are "persons" under RFRA, App. 17, it incorrectly held that because K&L is a for-profit business, as opposed to a religious, non-profit organization, it cannot exercise religion for purposes of RFRA. App. 13. RFRA protects "a

person's exercise of religion," 42 U.S.C. § 2000bb-1(a), and a corporation is a "person" for purposes of federal law where, as here, the term is not otherwise defined and the context does not require a different reading of the term. *See* 1 U.S.C. § 1 ("In determining the meaning of any Act of Congress, unless the context indicates otherwise. . . 'person' . . . include[s] corporations . . . as well as individuals."); *see also Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1707 (2012) (explaining that the word "person" often includes corporations, and Congress and the Supreme Court often use the word "individual" "to distinguish between a natural person and a corporation"); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 687 (1978) ("[B]y 1871, it was well understood that corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis.").

The district court effectively rewrote RFRA to apply only to the free exercise of *a religious person*, as opposed to RFRA's broad protection of any religious exercise *of a person*. This misreading of RFRA has wide-ranging implications for organizations and individuals alike, as many persons who

38

assert their religious freedom in response to legal requirements could not accurately be described as a "religious person." It is clear, however, that the protection of religious freedom extends both to the clergyman who lives in accordance with every teaching of his faith and to the wayward congregant who lives a primarily secular lifestyle. *See Grayson*, 666 F.3d at 454 ("[A] sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons?").

Similarly, religious freedom extends both to an organization that primarily engages in religious acts and to an organization that primarily engages in secular acts in a manner consistent with religious principles. Although the Free Exercise Clause "gives special solicitude to the rights of religious organizations," *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 132 S. Ct. 694, 706 (2012), that does not mean that the Free Exercise Clause (or RFRA) *only* protects religious organizations.

Indeed, just as a for-profit corporation need not be organized, operated, and maintained for the primary purpose of engaging in free speech activity

to invoke First Amendment free speech protections, *see First National Bank v. Bellotti*, 435 U.S. 765 (1978), a for-profit corporation need not be organized, operated, and maintained for the primary purpose of religious exercise to invoke the protections of the Free Exercise Clause and RFRA. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1120, n.9 (9th Cir. 2009) ("[A]n organization that asserts the free exercise rights of its owners need not be primarily religious. . . .").[12]/ Nowhere has the Supreme Court suggested that "First Amendment protection extends to corporations" *except* the Free Exercise Clause. *See Citizens United*, 130 S. Ct. at 899.[13]/

Corporations, whether for-profit or non-profit, can, and often do, engage in a plethora of quintessentially religious acts such as tithing,

---

[12]/ *Stormans* and *EEOC v. Townley Engineering & Manufacturing Co.*, 859 F.2d 610 (9th Cir. 1988), held that a business has standing to assert the free exercise rights of its owners, which further indicates that business owners do not entirely forfeit their religious freedom by entering the marketplace.

[13]/ *See also Primera Iglesia Bautista Hispana v. Broward Cnty.*, 450 F.3d 1295, 1305 (11th Cir. 2006) ("[C]orporations possess Fourteenth Amendment rights of equal protection, due process, and, through the doctrine of incorporation, the free exercise of religion."); *McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 850 (Minn. 1985) (stating that the "conclusory assertion that a corporation has no constitutional right to free exercise of religion is unsupported by any cited authority").

donating money to charities, and committing oneself to act in accordance with the teachings of a religious faith. The State of Illinois, where K&L is incorporated and located, recognizes that a corporation can act according to conscience (including with respect to the mandated services here) and provides a measure of protection for corporate religious exercise. 745 Ill. Comp. Stat. § 70/2 ("It is the public policy of the State of Illinois to respect and protect the right of conscience of all persons . . . whether acting individually [or] corporately. . . ."). A corporate religious conscience can only be established through policies created by the owners or directors according to their own moral, ethical, and religious beliefs. K&L is no less substantially burdened by the Mandate than a non-profit corporation that is also run in accordance with the same religious principles would be.

Moreover, for purposes of substantial burden analysis, it would improperly exalt form over substance to draw hard and fast lines between a group health plan and its issuer, and between the business and its management that arranges for the plan. A group health plan does not will itself into existence. It can only be created through a business that arranges

for the plan. And a business does not make such decisions or take necessary actions except through human agency, *i.e.*, through its managers, officers, and owners pursuant to the policies established by those individuals. Consequently, it would ignore reality to suggest that group health plan requirements can have no impact whatsoever upon the religious exercise of businesses that create and pay for such plans and their owners.

In any event, even assuming *arguendo* that K&L was incapable of engaging in religious exercise, Cyril and Jane Korte have independent claims of their own since the Mandate will compel them to take actions that they believe are immoral. As the motions panel of this Court noted,

> the government's primary argument is that because K & L Contractors is a secular, for-profit enterprise, no rights under RFRA are implicated at all. This ignores that Cyril and Jane Korte are also plaintiffs. Together they own nearly 88% of K & L Contractors. It is a family-run business, and they manage the company in accordance with their religious beliefs. This includes the health plan that the company sponsors and funds for the benefit of its nonunion workforce. That the Kortes operate their business in the corporate form is not dispositive of their claim. *See generally Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876 (2010). The contraception mandate applies to K & L Contractors as an employer of more than 50

employees, and the Kortes would have to violate their religious beliefs to operate their company in compliance with it.

App. 26; *cf. EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008)

("Free religious exercise would mean little if restricted to places of worship

or days of observance, only to disappear the next morning at work.").

The Mandate imposes the same substantial burden on Cyril and Jane

Korte as it does on K&L. The Mandate requires the Kortes to manage their

closely-held, family company in a way that violates the company's ethical

guidelines and their religious faith. Because K&L is an S corporation, all

financial penalties paid by K&L for refusing to comply with the Mandate

will have a direct financial impact on the Kortes—solely because of their

refusal to compromise their Catholic beliefs. As the district court correctly

noted, "[b]ecause K&L is a family-owned S corporation, the religious and

financial interests of the Kortes are virtually indistinguishable." App. 10.

A corporation, like K&L, does not think, act, and establish business

values and practices except through human agency. It is this human

agency that defines the corporation's purposes and shapes its character and

ethos—in addition to fulfilling the business's commercial mission. The

43

Mandate will prevent Cyril and Jane Korte from continuing to run their family company pursuant to the tenets of their Catholic faith. As such, the Mandate substantially burdens the religious exercise of both the Kortes and K&L. In light of the substantial burden imposed on the Kortes' religious exercise, the district court's conclusion that *Yoder*, *Thomas*, and *Sherbert* can be distinguished because those cases involved individuals rather than organizations is erroneous. App. 20.

   More generally, business owners who operate their businesses in accordance with religious principles do not consent to the imposition of any and all substantial burdens upon their religious exercise by entering the commercial marketplace. In *United States v. Lee*, 455 U.S. 252 (1982), for example, the Supreme Court held that the requirement to pay social security taxes substantially burdened a for-profit Amish employer's religious exercise. The Court held that "[b]ecause the payment of the taxes or receipt of benefits violates Amish religious beliefs, compulsory participation in the social security system interferes with their free exercise rights." *Id*. at 257. Although the Court noted in the context of applying

strict scrutiny that religious adherents who enter the commercial marketplace do not have an *absolute* right to receive a religious exemption from *all* legal requirements that conflict with their faith, *id.* at 261, the fact that the Court concluded that there was a substantial burden and proceeded to apply strict scrutiny illustrates that the government does not have *carte blanche* to substantially burden the religious exercise of business owners.[14]/

Under the district court's reading of RFRA, a business operated with religious values, like K&L, would be foreclosed from ever challenging a law that imposes a substantial burden on religious exercise, no matter how extreme, and no matter how trivial the government's asserted interests. For example, a kosher deli would have no possible claim against a mandate

---

[14]/ Judge Rovner's concern about recognizing a potentially boundless right of an employer to limit insurance coverage based on hypothetical objections to other medical services, App. 29, would be properly addressed in considering whether a hypothetical requirement concerning such services meets strict scrutiny, *i.e.*, laws that are the least restrictive means of achieving a compelling governmental interest could be applied to an employer over its religious objection. This concern is not relevant, however, to the question of whether an employer's religious exercise has been substantially burdened.

forcing it, under pain of penalty, to sell pork, and a physicians' practice operated by pro-life doctors would have no possible claim against a mandate forcing it, under pain of penalty, to perform abortions, regardless of how attenuated those mandates were to the protection of any important, let alone compelling, governmental interest.

To be clear, RFRA does not give businesses an unbounded right to ignore anti-discrimination laws, refuse to pay payroll taxes, violate OSHA requirements, etc. in the name of religious freedom. Any such claims—assuming a substantial burden were present—should be resolved based on whether the law at issue satisfies strict scrutiny, *not* on the grounds that the employer could *never* have its religious exercise substantially burdened. The idea that RFRA categorically excludes employers, like Plaintiffs, whose religious tenets dictate that some action is required or forbidden by their faith is untenable.

C. Applying the Mandate to Plaintiffs does not withstand strict scrutiny

Because the district court held that the Mandate does not substantially burden Plaintiffs' religious exercise, it did not apply RFRA's strict scrutiny

test. App. 21-22. This test, which requires "the most rigorous of scrutiny," *Lukumi*, 508 U.S. at 546, "is the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997); *see also* App. 26, 28 (concluding that "the Kortes have established a reasonable likelihood of success on their RFRA claim" in light of the "high bar" set by RFRA's "exacting standard" of strict scrutiny).

When the Supreme Court applied strict scrutiny in both *Sherbert* and *Yoder*, it "looked beyond broadly formulated interests justifying the general applicability of government mandates and scrutinized the asserted harm of granting specific exemptions to particular religious claimants." *O Centro*, 546 U.S. at 431. It is therefore not enough for the government to describe a compelling interest in the abstract or in a categorical fashion; the government must demonstrate that the interest "would be adversely affected by granting an exemption" *to the religious claimant*. *Id.*; *see also Koger*, 523 F.3d at 800 (stating that the government's asserted interests should be considered in light of the religious claimant's specific circumstances, rather than in a general manner, and that the government

must demonstrate that providing a religious accommodation to the claimant would endanger a compelling interest). In this case, Defendants must demonstrate *that exempting Plaintiffs* from the Mandate would significantly jeopardize the government's asserted interests.

1. The government cannot demonstrate a compelling need to apply the Mandate to Plaintiffs

Just two years ago, the Supreme Court described a compelling interest as a "high degree of necessity," noting that "[t]he State must specifically identify an 'actual problem' in need of solving, and the curtailment of [the asserted right] must be actually necessary to the solution." *Brown*, 131 S. Ct. at 2738, 2741 (citations omitted). The "[m]ere speculation of harm does not constitute a compelling state interest." *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 543 (1980).

While recognizing "the general interest in promoting public health and safety," the Court has held that "invocation of such general interests, standing alone, is not enough." *O Centro*, 546 U.S. at 438. The government must demonstrate "some substantial threat to public safety, peace, or order" (or an equally compelling interest) that would be posed by

48

exempting the claimant. *Yoder*, 406 U.S. at 230. In this context, "only the gravest abuses, endangering paramount interests, give occasion for permissible limitation." *Sherbert*, 374 U.S. at 406. Also, "a law cannot be regarded as protecting an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprohibited." *Lukumi*, 508 U.S. at 547 (internal quotation marks omitted).

In similar fashion, this Court has explained, in response to the government's argument that it was "self-evident" why a prison policy survived strict scrutiny, that "RFRA does not allow governments to defeat claims so easily. A governmental body that imposes a 'substantial' burden on a religious practice must *demonstrate*, and not just assert, that the rule at issue is the least restrictive means of achieving a compelling governmental interest." *O'Bryan*, 349 F.3d at 401; *see also Conyers v. Abitz*, 416 F.3d 580, 585-86 (7th Cir. 2005) (holding that the government improperly relied upon assumptions rather than evidence and failed to demonstrate that substantially burdening an inmate's free exercise was necessary to further a legitimate penological interest).

Here, Defendants have proffered two governmental interests in support of the Mandate: health and gender equality. 77 Fed. Reg. 8725, 8729. What radically undermines the government's claim that the Mandate is needed to address a compelling harm to its asserted interests, however, is the massive number of employees, tens of millions in fact, whose employers are not subject to the Mandate and whose health and equality interests are left untouched by the Mandate. *See Newland*, 2012 U.S. Dist. LEXIS 104835 at *23; *Tyndale House Publ'rs*, 2012 U.S. Dist. LEXIS 163965 at *57-61.

For example, Defendants cannot sufficiently explain how their asserted interests can be of the highest order in this context when the Mandate does not apply to plans grandfathered under the Affordable Care Act. Grandfathered plans have a right to permanently maintain their grandfathered status (and thus to permanently ignore the Mandate). *See, e.g.*, 42 U.S.C. § 18011 ("Preservation of *right to maintain* existing coverage") (emphasis added); 45 C.F.R. § 147.140 (same); Cong. Research Serv., RL 7-5700, *Private Health Insurance Provisions in PPACA* (May 4, 2012) ("Enrollees could continue and renew enrollment in a grandfathered plan *indefinitely*.")

(emphasis added). The district court's characterization of grandfathered plan status as a "gradual transition," App. 14, is erroneous because such plans are legally entitled to retain their grandfathered status, and thus avoid compliance with the Mandate, indefinitely.

The district court in *Newland v. Sebelius* found, based on government estimates, that "*191 million* Americans belong to plans which may be grandfathered under the [Affordable Care Act]," 2012 U.S. Dist. LEXIS 104835 at *4 (emphasis added), and the government has estimated that "*98 million* individuals will be enrolled in grandfathered group health plans in 2013." 75 Fed. Reg. 41726, 41732 (emphasis added). This broad exemption from the Mandate leaves appreciable damage to the government's asserted interests untouched and indicates the lack of any compelling need to apply the Mandate to Plaintiffs in violation of their consciences. *See Newland*, 2012 U.S. Dist. LEXIS 104835 at *23 ("[T]his massive exemption completely undermines any compelling interest in applying the preventive care coverage mandate to Plaintiffs."); *Tyndale House Publ'rs*, 2012 U.S. Dist. LEXIS 163965 at *61 ("[C]onsidering the myriad of exemptions . . . the

defendants have not shown a compelling interest in requiring the plaintiffs to provide the specific contraceptives to which they object."); *Am. Pulverizer*, 2012 U.S. Dist. LEXIS 182307 at *14 (explaining that the significant exemptions to the Mandate "undermine any compelling interest in applying the preventative coverage mandate to Plaintiffs").

In addition, although grandfathered plans have a right to indefinitely ignore the Mandate, they must comply with other provisions of the Affordable Care Act.[15]/ The *government's decision* to impose the Affordable Care Act's prohibition on excessive waiting periods on grandfathered plans, for example, but not require them to comply with the Mandate, indicates that the *government itself* does not think the Mandate is necessary to protect interests of the highest order. *See Lukumi*, 508 U.S. at 547.

Defendants also cannot explain how there is a compelling need to apply the Mandate to Plaintiffs when employers with fewer than fifty full-time

---

[15]/ For a summary of which Affordable Care Act provisions apply to grandfathered health plans, see *Application of the New Health Reform Provisions of Part A of Title XXVII of the PHS Act to Grandfathered Plans*, http://www.dol.gov/ebsa/pdf/grandfatherregtable.pdf (last visited Jan. 24, 2013).

employees (employing millions of individuals)[16]/ can avoid the Mandate entirely by not providing insurance. With respect to the interests offered in support of the Mandate, there is no principled difference between an employer with approximately ninety full-time employees such as K&L, which is subject to the Mandate, and an employer with forty-nine full-time employees, which would not be subject to the Mandate. This further illustrates that the Mandate is not a necessary means of protecting any compelling governmental interest. *See O Centro*, 546 U.S. at 432-37 (granting relief under RFRA to 130 members of a religion to allow them to use a Schedule I drug in their religious ceremonies because the government allowed hundreds of thousands of Native Americans to use a different Schedule I drug in their religious ceremonies).

Furthermore, the government has failed to meet its burden of demonstrating a "high degree of necessity" for the Mandate, that there is

---

[16]/ More than twenty million individuals are employed by firms with fewer than twenty employees. *Statistics about Business Size (including Small Business) from the U.S. Census Bureau*, http://www.census.gov/econ/smallbus.html (last visited Jan. 24, 2013).

"an 'actual problem' in need of solving," and that substantially burdening

Plaintiffs' religious exercise is "actually necessary to the solution." *Brown*,

131 S. Ct. at 2738, 2741. For example, according to a recent study, cost is not

a prohibitive factor to contraceptive access. Among women currently not

using birth control, only 2.3% said it was due to birth control being "too

expensive," and among women currently using birth control, only 1.3%

said they chose their particular method of birth control because it was

"affordable."[17]/

The absence of real, concrete evidence that the Mandate is actually

necessary to prevent significant harm to any compelling governmental

interest stands in stark contrast to the kind of evidence that was present

when this Court has concluded that the government met its burden under

the strict scrutiny analysis. *See, e.g., St. John's*, 502 F.3d at 634 (holding that

the government "made a compelling case" that actions taken to modernize

O'Hare International Airport were necessary to "address[] a serious

---

[17]/ *Contraception in America, Unmet Needs Survey, Executive Summary*, http://www.contraceptioninamerica.com/downloads/Executive_Summary. pdf at 14 (Fig. 10), 16 (Fig. 12) (2012) (last visited Jan. 24, 2013).

problem with national—indeed international—consequences"); *United States v. Israel*, 317 F.3d 768, 771-72 (7th Cir. 2003) (concluding that the government has a compelling interest in preventing drug abuse, including the use of marijuana, "[i]n light of [the] impressive amount of legislative and judicial reasoning" on the subject).

Even if one assumed *arguendo* that cost was a prohibitive factor to contraceptive access, there is no evidence whatsoever that substantially burdening Plaintiffs' religious exercise by enforcing the Mandate is *actually necessary* (*i.e.*, that none of the various less restrictive alternatives discussed in the next section of this brief would be sufficient). *See Brown*, 131 S. Ct. at 2738; *cf. Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002) ("The Government simply has not provided sufficient justification here. If the First Amendment means anything, it means that regulating speech must be a last—not first—resort. Yet here it seems to have been the first strategy the Government thought to try.").

In sum, Defendants cannot demonstrate a compelling need to require Plaintiffs to comply with the Mandate for their approximately twenty non-

union employees while employers of millions of employees nationwide are exempt from the Mandate. Although health and equality are important interests in the abstract, exempting Plaintiffs from the Mandate would pose no compelling threat to those interests in actuality.

2. The Mandate is not the least restrictive means of achieving any compelling governmental interest

The existence of a compelling interest in the abstract does not give the government *carte blanche* to promote that interest through any regulation of its choosing particularly where, as here, a fundamental right is substantially burdened. *See, e.g., United States v. Robel*, 389 U.S. 258, 263 (1967) (noting that compelling interests "cannot be invoked as a talismanic incantation to support any [law]"). Even where, for example, an interest as compelling as the protection of children is the object of government action, "the constitutional limits on governmental action apply." *Brown*, 131 S. Ct. at 2741. If the government "has open to it a less drastic way of satisfying its legitimate interests, it may not choose a [regulatory] scheme that broadly stifles the exercise of fundamental personal liberties." *Anderson v. Celebrezze*, 460 U.S. 780, 806 (1983).

Assuming *arguendo* that the interests proffered by Defendants were compelling in this context, the Mandate is not the least restrictive means of furthering those interests. Defendants could directly further their interest in providing free access to contraceptive services in a myriad of ways without violating Plaintiffs' consciences. Indeed, of the various ways the government could achieve its interests, it has chosen perhaps the *most burdensome* means for non-exempt employers with religious objections to contraceptive services, such as Plaintiffs.

For example, the government could (1) offer tax deductions or credits for the purchase of contraceptive services; (2) expand eligibility for already existing federal programs that provide free contraception; (3) allow citizens who pay to use contraceptives to submit receipts to the government for reimbursement; or (4) provide incentives for pharmaceutical companies that manufacture contraceptives to provide such products to pharmacies, doctor's offices, and health clinics free of charge. Each of these options would directly further Defendants' proffered interests without substantially burdening Plaintiffs' religious exercise, and Defendants

cannot prove that *all* of these options would be insufficient or unworkable.

*Koger*, 523 F.3d at 801 (noting that the existence of just one plausible less

restrictive means by which the government could have furthered its

asserted interests is sufficient to conclude that the government has not met

its burden under strict scrutiny).

To illustrate, the federal government already provides low-income

individuals with free access to contraception through Title X and Medicaid

funding. It could raise the income cap to make free contraception available

to more Americans.[18]/ *See Newland*, 2012 U.S. Dist. LEXIS 104835 at *26-27

("'[T]he government already provides free contraception to women.' . . .

Defendants have failed to adduce facts establishing that government

provision of contraception services will necessarily entail logistical and

administrative obstacles defeating the ultimate purpose of providing no-

---

[18]/ In 2010, public expenditures for family planning services totaled $2.37 billion, and Title X of the Public Health Service Act, devoted specifically to supporting family planning services, contributed $228 million during this same year. Guttmacher Institute, *Facts on Publicly Funded Contraceptive Services in the United States*, May 2012, http://www.guttmacher.org/pubs/fb_contraceptive_serv.html (last visited Jan. 24, 2013).

cost preventive health care coverage to women."); *see generally Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 800 (1988) (a more narrowly tailored approach to requiring fundraisers to disclose financial details during the course of a solicitation would be for the State "itself [to] publish the detailed financial disclosure forms it requires professional fundraisers to file").

Even if Defendants claim these options would not be as effective as the Mandate, "a court should not assume a plausible, less restrictive alternative would be ineffective." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 824 (2000). If a less restrictive alternative would serve the government's purposes, "the legislature must use that alternative." *Id.* at 813. In addition, hypothetical concerns over administrative efficiency or convenience are insufficient to meet the government's burden. *See, e.g., Koger*, 523 F.3d at 800 (noting in the prison context that the government's interests in maintaining good order and orderly administration of dietary systems, although important, have not been deemed to be compelling interests); *Conyers*, 416 F.3d at 585-86 (holding that the government improperly relied upon a "rigid and unsupported assumption" that administrative

convenience necessarily justifies the imposition of substantial burdens upon an inmate's free exercise).

In sum, Plaintiffs have shown a likelihood of success on the merits on their RFRA claim, *e.g.*, *Stuller*, 695 F.3d at 678, and the district court reversibly erred in concluding otherwise.

## II.  Plaintiffs are Likely to Succeed on Their Free Exercise Claim

The district court denied Plaintiffs' motion for a preliminary injunction with respect to their Free Exercise Clause claim, concluding that "there is a substantial likelihood the [Affordable Care Act] contraception mandate will be found to be a neutral law of general applicability that only incidentally burdens Plaintiffs' religious exercise." App. 16. As explained previously, however, the Mandate substantially burdens Plaintiffs' religious exercise. And as explained herein, the district court reversibly erred in holding that there is a substantial likelihood that the Mandate is a neutral law of general applicability.

"A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny." *Lukumi*, 508 U.S.

at 546. "Neutrality and general applicability are interrelated" and "failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Id*. at 532.

A. The Mandate is not generally applicable

As noted in *Lukumi*, "[a]ll laws are selective to some extent, but categories of selection are of paramount concern when a law has the incidental effect of burdening religious practice." *Id*. at 542. Unlike in *Employment Division v. Smith*, 494 U.S. 872 (1990), which involved an "across-the-board criminal prohibition on a particular form of conduct," *id.* at 884, the Mandate is not an "across-the-board requirement" that all employers nationwide include contraceptive services in health plans for their employees. As noted previously, grandfathered health plans, employers with fewer than fifty full-time employees, and employers that meet Defendants' definition of a religious employer are all exempt from the Mandate; moreover, various other non-profit employers fall within the temporary enforcement safe harbor. A legal mandate can hardly be said to

be generally applicable when literally millions of entities or individuals are not subject to its commands.[19]/

In addition, it would be a circular argument to conclude that the Mandate is generally applicable for purposes of the Free Exercise Clause because it applies to all employers or plans that are not otherwise exempt. The issue is not whether the Mandate applies generally to whom it applies, but rather whether the Mandate's numerous categories of exemptions (based on both secular and religious criteria) render it not generally applicable in the first place. Although a law need not necessarily be *universal* to be generally applicable, a law cannot contain *sizable* and *substantial* exemptions, as the Mandate does, and still be generally applicable.

## B. The Mandate is not religiously neutral

Under the Mandate, organizations that hold religious beliefs dictating that employment or membership within the organization must be limited

---

[19]/ As noted previously, the district court's characterization of grandfathered plan status as a "gradual transition," App. 14, is erroneous.

to members of their own faith may be exempted, whereas organizations that hold religious beliefs dictating that employment or membership should be opened to all individuals regardless of their faith may not be exempted. In *Lukumi*, the Supreme Court reaffirmed that the "protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs." 508 U.S. at 532. It reiterated that the Free Exercise Clause does not tolerate laws that "impose special disabilities on the basis of religious status," *id*. at 533 (citation omitted), and held that the "*minimum* requirement for neutrality is that a law not discriminate on its face." *Id*.

The Mandate fails this minimum requirement. Granting a wholesale and blanket exemption to a certain category of employers based on the government's own narrow definition of religion, while requiring employers like Plaintiffs to abandon their religious beliefs in their choice of employee health insurance, is discriminatory. The Mandate's narrow definition of religion creates an impermissible line between employers that exercise their religion in an insular, self-contained, and institutionalized

fashion and those employers that, equally motivated by their religious convictions, exercise their religion through charitable works or through their conduct in the commercial marketplace. *See Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1337 (D.C. Cir. 2001) (the religion clauses protect more than just "religious institutions with hard-nosed proselytizing . . . that limit their enrollment to members of their religion") (relying on *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979)). The Free Exercise Clause protects non-church related entities like Plaintiffs just as it protects houses of worship and traditional religious organizations. *See generally Frazee v. Emp't Sec. Dep't*, 489 U.S. 829 (1989); *Fowler v. Rhode Island*, 345 U.S. 67 (1953).

Because the Mandate is neither generally applicable nor neutral, and cannot survive strict scrutiny, the district court reversibly erred in holding that Plaintiffs were unlikely to succeed on their Free Exercise Clause claim.

### III. Plaintiffs Satisfy the Remaining Injunction Factors

Plaintiffs have shown a likelihood of success on the merits, and, therefore, "the balance of harms normally favors granting preliminary

injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *See ACLU v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012). Absent injunctive relief, the Mandate will violate Plaintiffs' rights on an immediate and continuing basis: Plaintiffs will be forced to either engage in acts they believe are immoral or incur penalties for non-compliance with the Mandate for each day they offer a health plan consistent with their religious beliefs. *See* App. 28 ("RFRA protects the same religious liberty protected by the First Amendment, and it does so under a more rigorous standard of judicial scrutiny; the loss of First Amendment rights 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)). Thus, Plaintiffs will be irreparably harmed without an injunction, and the balance of harms tips strongly in their favor.

In addition, a preliminary injunction would preserve the status quo between the parties. The last uncontested status between the parties was prior to August 1, 2012, when the Mandate went into effect. *See Illinois Cent.*

*R.R. Co. v. Bhd.*, 398 F.2d 973, 977 (7th Cir. 1968). Before that date, Plaintiffs had the freedom to fashion a health care plan in accordance with their religious beliefs. The imposition and enforcement of the Mandate has taken that freedom away from Plaintiffs, absent an injunction.

Furthermore, granting Plaintiffs a preliminary injunction would not harm the public interest. An injunction would simply put Plaintiffs' approximately twenty full-time, non-union employees in the same position as the millions of employees and their families whose employers Defendants have already exempted from the Mandate. Nor would an injunction harm the Defendants, who have no legitimate interest in infringing upon Plaintiffs' rights. *See Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004).

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court reverse the district court's decision denying their motion for a preliminary injunction and remand this case with instructions that the district court enter a preliminary injunction as requested by Plaintiffs.

Respectfully submitted on this 28th day of January, 2013,

<u>/s/ Edward L. White III</u>
Edward L. White III
  *Counsel of Record*
American Center for Law & Justice
5068 Plymouth Road
Ann Arbor, Michigan 48105
Tel. 734-662-2984
Fax. 734-302-1758
ewhite@aclj.org

Francis J. Manion
Geoffrey R. Surtees
American Center for Law & Justice
6375 New Hope Road
New Hope, Kentucky 40052
Tel. 502-549-7020
Fax. 502-549-5252

Erik M. Zimmerman*
American Center for Law & Justice
1000 Regent University Drive
Virginia Beach, Virginia 23464
Tel. 757-226-2489
Fax. 757-226-2836

* Admission to Seventh Circuit bar
  pending

*Attorneys for Plaintiffs-Appellants*

## STATEMENT CONCERNING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a) and Circuit Rule 34(f), Plaintiffs request that this Court hear oral argument. This case presents issues of great importance concerning the right of employers to conduct business in accordance with their religious beliefs and principles. Oral argument will assist this Court in reaching a full understanding of the issues presented and the underlying facts.

/s/ Edward L. White III
Edward L. White III
  *Counsel of Record*
American Center for Law & Justice
5068 Plymouth Road
Ann Arbor, Michigan 48105
Tel. 734-662-2984
Fax. 734-302-1758
ewhite@aclj.org

*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing Brief of Plaintiffs-Appellants complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,530 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 97-2003 in 14 point Palatino Linotype font.

/s/ Edward L. White III
Edward L. White III
  *Counsel of Record*
American Center for Law & Justice
5068 Plymouth Road
Ann Arbor, Michigan 48105
Tel. 734-662-2984
Fax. 734-302-1758
ewhite@aclj.org

*Attorney for Plaintiffs-Appellants*

CIRCUIT RULE 30(d) CERTIFICATE

Pursuant to Circuit Rule 30(d), the undersigned counsel certifies that all material required by Circuit Rule 30(a) and (b) are included in the Appendix.

/s/ Edward L. White III
Edward L. White III
  *Counsel of Record*
American Center for Law & Justice
5068 Plymouth Road
Ann Arbor, Michigan 48105
Tel. 734-662-2984
Fax. 734-302-1758
ewhite@aclj.org

*Attorney for Plaintiffs-Appellants*

CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2013, the Brief of Plaintiffs-Appellants was filed with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

The following participant in the case is a registered CM/ECF user and will be served by the appellate CM/ECF system:

Alisa B. Klein
Department of Justice
Civil Division Appellate Staff
950 Pennsylvania Avenue N.W.
Room 7235
Washington, DC 20530-0000
alisa.klein@usdoj.gov

I further certify that the following participant in the case is not a registered CM/ECF user. On January 28, 2013, two copies of the Brief were sent via first-class mail, proper postage prepaid to the following non-CM/ECF participant:

Bradley Phillip Humphreys
Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC 20530

/s/ Edward L. White III
Edward L. White III

71

# APPENDIX

## TABLE OF CONTENTS

Page

Memorandum and Order of District Court Denying Plaintiffs'
  Motion for a Preliminary Injunction, DCT Doc. 54
  (December 14, 2012)........................................................................ App. 1

Order of the Court of Appeals Granting Plaintiffs-Appellants'
  Emergency Motion for an Injunction Pending Appeal Before
  January 1, 2013, CTA Doc. 15 (December 28, 2012) ................................ App. 23

Declaration of Plaintiff Cyril B. Korte and Ethical Guidelines
  of Plaintiff Korte & Luitjohan Contractors, Inc., in Support of
  Plaintiffs' Motion for a Preliminary Injunction, DCT Doc. 7-2
  (October 10, 2012) ........................................................................ App. 31

Declaration of Plaintiff Jane E. Korte in Support of Plaintiffs'
  Motion for a Preliminary Injunction, DCT Doc. 7-3
  (October 10, 2012) ........................................................................ App. 37

*Triune Health Grp. v. U.S. Dep't of Health & Human Servs.*,
  No. 1:12-cv-06756, slip op. (N.D. Ill. Jan. 3, 2013).................................. App. 42

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CYRIL B. KORTE,** | ) |
| **JANE E. KORTE, and** | ) |
| **KORTE & LUITJOHAN** | ) |
| **CONTRACTORS, INC.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| | )   **Case No. 3:12-CV-01072-MJR** |
| **UNITED STATES DEPARTMENT OF** | ) |
| **HEALTH AND HUMAN SERVICES,** | ) |
| **KATHLEEN SEBELIUS,** | ) |
| **UNITED STATES DEPARTMENT OF** | ) |
| **THE TREASURY,** | ) |
| **TIMOTHY F. GEITHNER,** | ) |
| **UNITED STATES DEPARTMENT OF** | ) |
| **LABOR,  and** | ) |
| **HILDA L. SOLIS,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiffs Cyril B. Korte and Jane E. Korte (husband and wife) are equal

shareholders who together own a controlling interest in Plaintiff Korte & Luitjohan Contractors,

Inc., a secular, for-profit construction business.[1]  On October 9, 2012, the three Plaintiffs filed a

complaint for declaratory judgment and injunctive relief regarding whether they have to comply

with the Preventive Health Services coverage provision in the Women's Health Amendment (42

U.S.C. § 300gg–13(a)(4) (Mar. 23, 2010)) to the Patient Protection and Affordable Care Act of

2010, ("the ACA"), Pub. L. No. 111–148, 124 Stat. 119 (Mar. 23, 2010), as amended by the

Heath Care and Education Reconciliation Act, Publ. L. No. 111–152, 124 Stat. 1029 (Mar. 30

---

[1] Cyril B. Korte, as President, and Jane E. Korte, as Secretary, each hold a 43.674 % ownership
interest in Korte & Luitjohan Contractors, Inc., an Illinois corporation.

2010).  Plaintiffs name as defendants the three agencies charged with implementing and administering the mandate, and their respective heads: the Department of Health and Human Services and Secretary Kathleen Sebelius; the Department of the Treasury and Secretary Timothy F. Geithner; and the Department of Labor and Secretary Hilda L. Solis.

As a general matter, the ACA "aims to increase the number of Americans covered by health insurance and decrease the cost of health care." *National Federation of Independent Business v. Sebelius*, __U.S.__, 132 S.Ct. 2566, 2580 (Jun. 28, 2012).  In deciding to include a contraception coverage mandate, Congress found that: (1) the use of preventive services, including contraception, results in a healthier population and reduces health care costs (for reasons related and unrelated to pregnancy); and (2) access to contraception improves the social and economic status of women.  *See* 77 Fed. Reg. 8725, 8727-8728 (Feb. 15, 2012).

According to the contraception coverage mandate, unless grandfathered or otherwise exempt (which Korte & Luitjohan is not), commencing in plan years after August 1, 2012, employee group health benefit plans and health insurance issuers[2] must include coverage, without cost sharing, for "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures and patient education and counseling for all women with reproductive capacity,"  "[a]s prescribed."[3]  *See* Health Resources and Services Administration ("the HRSA"), *Women's Preventive Services: Required Health Plan Coverage Guidelines (*available at

---

[2] The mandate is directed at "[a] group health plan and a health insurance issuer offering group or individual health insurance coverage."  42 U.S.C. § 300gg-13(a).  Group health plans include insured and self-insured plans.  76 Fed. Reg. 46,621, 46,622 (Aug. 3, 2011).

[3] Employers with fewer than 50 employees are not required to provide any health insurance plan.  26 U.S.C. § 4980H(c)(2)(A).

App.  002

http://www.hrsa.gov/womensguidelines/).[4] FDA-approved contraceptive medicines and devices

include barrier methods, implanted devices, hormonal methods, and emergency contraceptive

"abortifacients," such as "Plan B" (which prevents fertilization of the egg) and "Ella" (which

stops or delays release of the egg).    *See* FDA, Birth Control Guide (Aug. 2012) (available at

http://www.fda.gov/ForConsumers/ByAudience/ForWomen/ucm18465).    Employers with at

least 50 employees that do not comply with the mandate face "fines, penalties [in the form of a

tax], and enforcement actions for non-compliance. *See* 29 U.S.C. § 1132(a) (civil enforcement

actions by the Department of Labor and insurance plan participants); 26 U.S.C. § 4980D(a), (b)

(penalty of $100 per day per employee for noncompliance with coverage provisions of the

ACA); 26 U.S.C. § 4980H (annual tax assessment for noncompliance with requirement to

provide health insurance)." *Tyndale House Publishers, Inc. v. Sebelius*, __F.Supp.2d__, 2012

WL 5817323, *2 (D.D.C., Nov. 16, 2012). *See also* 77 Fed. Reg. 8725, 8729 (Feb. 15, 2012).

Plaintiffs Cyril B. Korte and Jane E. Korte ("the Kortes") are Catholic and have

concluded that complying with the contraception coverage mandate would require them to

violate their religious beliefs because the mandate requires them, and/or the corporation they

control, to arrange for, pay for, provide, facilitate, or otherwise support not only contraception

and sterilization, but also abortion.  By "abortion," the Kortes are referring to the fact that the

"Food and Drug Administration approved contraceptive methods" include drugs and devices that

are abortifacients, such as the "morning-after pill," "Plan B," and "Ella." According to the

Kortes, they personally adhere to the Catholic Church's teachings that artificial means of

---

[4] The HRS guidelines and rationale are based on recommendations from the Institute of Medicine (IOM) (available at http://www.iom.edu/Reports/2011/Clinical-Preventive-Services-for-Women-Closing-the-Gaps.aspx).  The IOM estimates that 47 million women would be guaranteed access to preventive services under the mandate (excluding those who were covered by Medicare and those "grandfathered" and not covered by the ACA).

App.  003

contraception, sterilization and actions intended to terminate human life are immoral and gravely sinful.[5]  Also, the Kortes seek to manage and operate Korte & Luitjohan Contractors, Inc. ("K & L") in a way that reflects the teachings, mission and values of their Catholic faith.[6]  As of September 27, 2012 (13 days before this action was filed), K&L established written "Ethical Guidelines" to that effect, but an exception is made when a physician certifies that certain sterilization procedures or drugs commonly used as contraception are prescribed with the intent to treat certain medical conditions, not with the intent to prevent or terminate pregnancy (Doc. 7-2, p. 6).[7]  However, Plaintiffs acknowledge that in August 2012 they learned that their current group health plan covers contraception.  The Kortes investigated ways to obtain coverage that would comply with their beliefs and corporate policy, but they have yet to find an insurer that will issue a policy that does not cover contraception.[8]  Plaintiffs acknowledge that they could self-insure, but that does not relieve them of their legal obligation to comply with the ACA mandate.

K&L currently has approximately 90 full-time employees; about 70 of those employees belong to unions and about 20 employees are nonunion. As a "noncash benefit," K&L provides group health insurance for its nonunion employees. Union employees are covered by

---

[5]  In furtherance of their Catholic faith, the Kortes both "strongly support, financially and otherwise, Catholic fundraisers and other events, including, but not limited to, the STYDEC Ghana project, restoration of their parish church, annual church picnic, and annual parish school auction."  (Doc. 2, p. 5 ¶ 22).

[6] The Articles of Incorporation make no reference to the Catholic faith in K&L's stated purpose; only secular construction, excavating and contracting are mentioned (Doc. 22-1).

[7] During oral argument, Plaintiffs indicated that the physician's characterization would control, even if a contraceptive had a dual use.

[8] "[A] sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons?" *Grayson v. Schuler*, 666 F.3d 450, 454 -455 (7th Cir. 2012).

4

separate health insurance through their respective unions, over which Plaintiffs have no control.[9] If K&L does not provide the mandated contraceptive coverage, it estimates that it will be required to pay approximately $730,000 per year as a tax and/or penalty, which it considers "ruinous."  K&L does not want to abandon providing health coverage because it would severely impact K&L's ability to compete with other companies that offer such coverage, and K&L employees would have to obtain expensive individual policies in the private marketplace.[10]

Plaintiffs have brought suit contending that the ACA mandate violates the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb–1 (2006), the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment, the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553(b)-(c), 706(2)(A), 706(2)(D) (2006).

Plaintiffs now move for a preliminary injunction relative to Counts I and II of the complaint, their RFRA and Free Exercise Clause claims (Docs. 6 and 7).  Defendants filed a memorandum in opposition (Doc. 22), to which Plaintiffs replied (Doc. 26).  The Court has also received briefs *amicus curiae* from: the American Civil Liberties Union and American Civil Liberties Union of Illinois, in support of Defendants (Doc. 32); the Liberty, Life and Law Foundation, in support of Plaintiffs (Doc. 39); and Women Speak for Themselves, Bioethics Defense Fund and Life Legal Defense Foundation, in support of Plaintiffs (Doc. 48).  Plaintiffs filed a reply to the American Civil Liberties' brief (Doc. 43).  In addition, oral argument was heard on December 7, 2012.

---

[9] Plaintiffs and Defendants agree that the fact that the union/nonunion distinction cannot be used to qualify K&L as a small business with under 50 employees.

[10] Pursuant to the Illinois Health Care Right of Conscience Act, 745 ILCS 70/3, K&L is exempt from a similar Illinois coverage mandate.

App.  005

Defendants assert that K&L, a secular, for-profit corporation, is not a "person" and cannot exercise religion; therefore, the ACA mandate does not violate the Free Exercise Clause or RFRA.   From Defendants' perspective, K&L is attempting to eliminate the legal separation provided by the corporate form in order to impose the personal religious beliefs of its directors upon K&L's employees.   Defendants further fear opening the door to for-profit corporations claiming a variety of exemptions from untold general commercial laws, obviating the government's ability to tackle national problems by way of rules of general applicability.

## I.  Applicable Legal Standards

### A.  Injunctive Relief

To obtain a preliminary injunction, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Department of Health*, 699 F.3d 962, 972 (7th Cir. 2012).  *See also American Civil Liberties Union of Illinois v. Alvarez,* 679 F.3d 583, 589–590 (7th Cir. 2012); *Christian Legal Society v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006); *Joelner v. Village of Washington Park, Illinois,* 378 F.3d 613, 619 (7th Cir. 2004). If this threshold showing is made, the Court balances the harm to the parties if the injunction is granted or denied, as well as the effect of an injunction on the public interest. *See Alvarez,* 679 F.3d at 589–590; *Christian Legal Society,* 453 F.3d at 859.  "The more likely it is that [the moving party] will win its case on the merits, the less the balance of harms need weigh in its favor." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States, Inc.,* 549 F.3d 1079, 1100 (7th Cir. 2008).

The Court of Appeals for the Seventh Circuit has advised that, relative to preliminary injunctions in First Amendment cases:

6

App.  006

> "[T]he likelihood of success on the merits will often be the determinative factor." *Joelner v. Village of Washington Park, Ill.,* 378 F.3d 613, 620 (7th Cir.2004). This is because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion), and the "quantification of injury is difficult and damages are therefore not an adequate remedy," *Flower Cab Co. v. Petitte,* 685 F.2d 192, 195 (7th Cir. 1982). Moreover, if the moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional. *Joelner,* 378 F.3d at 620. Stated differently, "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006).

*Alvarez,* 679 F.3d at 589-590 (footnote omitted).

### B.  Free Exercise Clause

The First Amendment provides that Congress shall make no law "prohibiting the free exercise" of religion.  *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.,* __U.S.__, 132 S.Ct. 694, 702 (Jan. 11, 2012).  However, the "right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Employment Division, Department of Human Resources of Oregon v. Smith,* 494 U.S. 872, 879 (1990) (internal punctuation omitted).  The Court of Appeals for the Seventh Circuit has observed, "[i]f they were excused, this might be deemed favoritism to religion and thus violate the establishment clause."  *River of Life Kingdom Ministries v. Village of Hazel Crest, Illinois,* 611 F.3d 367, 370 (7th Cir. 2010).

### C.  RFRA

The Religious Freedom Restoration Act of 1993 ("RFRA"), 107 Stat. 1488, 42 U.S.C. § 2000bb *et seq.,* prohibits the federal government from substantially burdening "a

person's" exercise of religion, "even if the burden results from a rule of general applicability" (§ 2000bb-1(a)), except when the government can "demonstrat[e] that application of the burden to the person-(1) [furthers] a compelling governmental interest; and (2) is the least restrictive means of furthering that . . . interest," (§ 2000bb-1(b)). A statutory cause of action is created under 42 U.S.C. § 2000bb-1(c), and standing to bring such a suit is determined under the general rules for standing under Article III of the Constitution.

RFRA affords more protection than the Free Exercise Clause. Congress enacted RFRA in response to *Employment Division, Department of Human Resources of Oregon. v. Smith,* 494 U.S. 872, 883-890 (1990), where, in upholding a generally applicable law that burdened a religious practice, the Supreme Court held that the Free Exercise Clause does <u>not</u> require a case-by-case assessment of the burdens imposed by facially constitutional laws. *See Sossamon v. Texas*, __U.S.__, 131 S.Ct. 1651, 1656 (2011); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006). RFRA was designed to restore the "compelling interest" test as set forth in *Sherbert v. Verner,* 374 U.S. 398 (1963), and *Wisconsin v. Yoder,* 406 U.S. 205 (1972), where free exercise of religion is substantially burdened.

## II.  Issues and Analysis

A.  Standing and Ripeness

Defendants' contentions that K&L is a secular corporation that cannot exercise religion, and that any burden on religious exercise is too attenuated to be actionable, along with the uncertainty regarding whether any K&L employee will ever seek coverage for contraception, beg the questions of standing and ripeness.

> An Article III court enjoys jurisdiction over a case only if the plaintiff demonstrates that he suffered an injury in fact, the defendant's actions caused the injury, and the remedy he seeks would redress his injury. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d

App.  008

556 (1984); *see also [American Civil Liberties Union of Illinois v.]*
*Alvarez,* 679 F.3d [583,] 590–91[(7th Cir. 2012)]. When the plaintiff
applies for prospective relief against a harm not yet suffered—or one he
believes he will suffer again—he must establish that he "is immediately in
danger of sustaining some direct injury as the result of the challenged
official conduct [,] and [that] the injury or threat of injury [is] both real
and immediate, not conjectural or hypothetical." *City of Los Angeles v.*
*Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (internal
quotation marks omitted). Otherwise, he fails to allege an actual case or
controversy before the court. *See* U.S. CONST. art. III, § 2, cl. 1.

*Bell v. Keating,* 697 F.3d 445, 451 (7th Cir. 2012); *see also Lujan v. Defenders of Wildlife,* 504

U.S. 555, 560-561 (1992).  "A claim is not ripe for adjudication if it rests upon contingent future

events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,*

523 U.S. 296, 300 (1998).

In *520 Michigan Avenue Associates. Ltd. v. Devine,* 433 F.3d 961, 962-963 (7th

Cir. 2006), the Court of Appeals for the Seventh Circuit recognized that courts have frequently

found standing for pre-enforcement actions based on the potential cost of complying and/or

penalties for noncompliance.  As already noted, K&L must secure its group health plan in

approximately two weeks and, if the plan does not cover contraception, there will be a

substantial monetary assessment.

Relative to whether K&L has standing, in *Citizens United v. Federal Election*

*Commission,* __U.S.__, 130 S.Ct. 876, 899 (2010), the Supreme Court broadly stated that "First

Amendment protection extends to corporations."  Drawing from *First National Bank v. Bellotti,*

435 U.S. 765, 783 (1978), the high court specifically found that, even though they are not natural

persons, corporations can exercise political speech because, like individuals, corporations

contribute to discussion, debate and the distribution of ideas and information.  Religious

institutions have long been organized as corporations at common law and under the King's

charter.  *Citizens United,* 130 S.Ct. at 926-927 (Scalia, J., concurring; joined by Alito, J., and

Thomas, J.)).  However, whether secular corporations can exercise religion is an open question. This Court does not need to specifically decide whether a secular, for-profit corporation can exercise religion.  A corporation may engage in activities to advance a belief system, and may assert constitutional rights on its own behalf and on behalf of its members.  *See generally National Association for the Advancement of Colored People v. Button*, 371 U.S. 415, 428-430 (1963).

Relative to the Kortes, in *Powers v. Ohio,* 499 U.S. 400 (1991), the Supreme Court explained that, in certain limited exceptions, it has "recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied": (1) "[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute"; (2) "the litigant must have a close relation to the third party"; and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests." *Id*. at 410–411 (citations omitted).  In *Rothner v. City of Chicago*, 929 F.2d 297, 301 (7th Cir. 1991) the appellate court observed that courts have viewed assertions of third-party standing "quite charitably," and this Court will do the same.  Because K&L is a family-owned S corporation[11], the religious and financial interests of the Kortes are virtually indistinguishable.  Therefore, the Kortes satisfy the third-party standing test for purposes of presenting the Free Exercise Clause and RFRA claims of K&L. Consequently, the Kortes *and*

---

[11]    S corporations are "pass-through" organizations that do not pay income tax themselves, but pass their income, gain, deduction, loss and credit (collectively referred to as "tax items") through to their owners.  Pass-through organizations report their tax items on a tax return in the name of the organization and report those items to their owners who, in turn, report the tax items on their returns.

Robert R. Keatinge and Ann E. Conaway, *Keatinge and Conaway on Choice of Business Entity: Selecting Form and Structure of a Closely Held Business* § 14:2 (2012).

App. 010

K&L have standing to sue; their injuries are sufficiently concrete.   Further, more rigorous analysis of the merits of Plaintiffs' claims will follow.

Although K&L has yet to violate the statute, the monetary assessment that awaits if it does not comply with the mandate is certain, and the deadline for securing insurance is fast approaching.   This imminent, substantial threat is sufficient for ripeness.   *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 149-153 (1967) (a declaratory judgment action is ripe if the regulation at issue requires "immediate and significant" conduct).

### B.   Likelihood of Success on the Merits

Adhering to the analytical framework for securing a preliminary injunction, Plaintiffs' likelihood of success on their Free Exercise Clause and RFRA claims must be addressed.   Plaintiffs contend that "*some* likelihood of success on the merits" is all that is required—suggesting a very light burden.   *See Stuller, Inc. v. Steak N Shake Enterprises, Inc*., 695 F.3d 676, 678 (7th Cir. 2012) (emphasis added); *American Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012).   However, the court of appeals' most recent iteration of the standard specifies a "*reasonable* likelihood of success on the merits." *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Department of Health*, 699 F.3d 962, 972 (7th Cir. 2012) (emphasis added).   Furthermore, in the context of securing such an extraordinary remedy, a "possibility" has been found to be less than a "likelihood."   *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 22 (2008) (parsing the meaning of "likely" relative to the "irreparable harm" requirement for issuance of a preliminary injunction).   As already noted, the stronger the chance of success on the merits, the less the balance of harms must tip in Plaintiffs' favor.  *Planned Parenthood of Indiana, Inc.,* 699 F.3d at 972.

Plaintiffs have moved for summary judgment on the merits, but the time for Defendants to respond has not passed.  However, during oral argument on the motion for a preliminary injunction Plaintiffs indicated that the arguments currently before the Court relative to the injunction are all that they have to present.  The Court's analysis regarding the likelihood of success is, therefore, less speculative and more in-depth than is often the case.  Of course, the Court's ruling on the motion for an injunction is not dispositive of Plaintiffs' motion for summary judgment.

1.   Free Exercise

As in *Hobby Lobby Stores, Inc., v. Sebelius*, __F.Supp.2d__, 2012 WL 5844972, at *5 (W.D. Okla. Nov. 19, 2012), the undersigned district judge views the exercise of religion as a "purely personal" guarantee that cannot be extended to corporations.  *See First National Bank of Boston v. Bellotti*, 435 U.S. 765, 778 n. 14 (1978) (observing that corporate identity has been determinative of why corporations are denied, for example, the privilege against self-incrimination (*see Wilson v. United States*, 221 U.S. 361, 382-386 (1911)), or the right to privacy on a par with individuals (*see California Bankers Association v. Shultz*, 416 U.S. 21, 65-67 (1974)).  In *Bellotti*, 435 U.S. at 778 n. 14, the Supreme Court indicated that whether a constitutional guarantee is "purely personal" "depends on the nature, history, and purpose of the particular provision."   In *Wallace v. Jaffree*, 472 U.S. 38, 49 (1985), the Supreme Court explained:  "As is plain from its text, the First Amendment was adopted to curtail the power of Congress to interfere with the individual's freedom to believe, to worship, and to express himself in accordance with the dictates of his own conscience."   James Madison eloquently stated, "[t]he Religion . . . of every man must be left to the conviction and conscience of every man; and it is the right of every man to exercise it as these may dictate." *Hein v. Freedom from Religion*

App.  012

*Foundation, Inc.*, 551 U.S. 587, 638 (2007) (Souter, J., dissenting) (quoting 2 Writings of James Madison 184 (G. Hunt ed. 1901)).  Thus, a corporation may be able to advance a belief system, but it cannot exercise religion.  In any event, Plaintiffs' Free Exercise Clause claim has little or no chance of success on its merits, regardless of whether a corporation can exercise religion.

From Plaintiffs' perspective, the mandate is not a neutral law of general applicability, and it substantially burdens their exercise of religion; therefore, strict scrutiny should apply (similar to the RFRA analysis).  Plaintiffs note that nonprofit churches and religious institutions are exempted under the government's definition of a "religious employer," but no exemption is afforded to for-profit religious employers like K&L.  Plaintiffs perceive a religious preference in favor of religious entities that fall within the statute's definition, as opposed to religious neutrality.  Also, Plaintiffs see the mandate as targeting religiously motivated conduct.  Plaintiffs further argue that the mandate is not generally applicable because it does not apply to employers with fewer than 50 full-time employees (26 U.S.C. § 4980H(c)(2)(A)), "grandfathered" plans in existence since March 23, 2010 (75 Fed. Reg. 41726, 41731 (Jul. 19, 2010)), nonprofit religious employers (76 Fed. Reg. 46621, 46626 (Aug. 3, 2011); 77 Fed. Reg. 8725 (Feb. 15, 2012)), or health care sharing ministries (26 U.S.C. §§ 5000A(d)(2)(A)(i), (ii), (B)(ii)).  Plaintiffs highlight that in *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993), the Supreme Court stated that, where the government "has in place a system of individual exemptions, it may not refuse to extend the system to cases of 'religious hardships' without compelling reasons." *Id.* at 568 (internal citations omitted).

Relative to the neutrality of the mandate, in *Church of the Lukumi Babalu Aye* the Supreme Court recognized that whether a law has an impermissible object may be discerned by looking at the face of the law, its "real operation," as well as the legislative history of the law.

13

App.  013

*Id.* at 534, 535, 540.   On its face, the ACA mandate makes no mention of religion whatsoever. The legislative history does not reflect any impermissible object; rather, the purpose was tied to public health and gender equality, not religion.   *See* 77 Fed. Reg. 8725, 8727-8728 (Feb. 15, 2012).

Plaintiffs contend that, because there are so many exemptions, the mandate is not generally applicable.   Plaintiffs cite projections that there are as many as 193 million grandfathered plans that may be exempted from the mandate.   *See Legatus v. Sebelius*, __F.Supp.2d__, 2012 WL 5359630, at *9 (E.D. Mich. Oct. 31, 2012) (citing 75 Fed. Reg. 34,538, 34,540 (Jun. 17, 2010)).   The government asserts that the grandfathering mechanism helps ease the transition of the mandate.[12]   Like the district court in *Legatus*, this Court does not perceive how a gradual transition undercuts the neutral purpose or general applicability of the mandate.   And, Plaintiffs do not link the grandfathering mechanism to any sort of religious preference.

According to the associated regulations, to qualify as an exempted "religious employer," an employer must meet all of the following criteria: (1) the inculcation of religious values is the purpose of the organization; (2) the organization primarily employs persons who share the religious tenets of the organization; (3) the organization serves primarily persons who share the religious tenets of the organization; and (4) the organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended. 45 C.F.R. § 147.130(a)(1)(iv)(B).   The "religious" exemption is not targeted to a particular religion or belief.   However, Plaintiffs perceive that the exemption

---

[12] The mid-range estimate is that 66 percent of small employer plans and 45 percent of large employer plans will relinquish their grandfather status by the end of 2013.  *See* 75 Fed. Reg. 34,538, 34,552 (Jun. 17, 2010).

App.  014

impermissibly favors nonprofit religious organizations, and excludes for-profit organizations, such as K&L, that are operated consistent with religious beliefs.

The Supreme Court has long recognized that one's religious beliefs cannot exempt one from complying with an otherwise valid law; otherwise, every citizen's beliefs would trump the law of the land—exceptions would swallow every rule. *See Reynolds v. United States*, 98 U.S. 145, 166-167 (1878); *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878-879 (1990) (in response to *Smith*, RFRA was passed, requiring the least restrictive means be used). Furthermore, "the course of constitutional neutrality in this area cannot be an absolutely straight line." *Walz v. Tax Commission of City of New York*, 397 U.S. 664, 669 (1970). Accordingly, statutory accommodations and exemptions for nonprofit religious organizations have been permitted as a mere accommodation of, and attempt to balance, the Free Exercise and Establishment Clauses. *See generally Walz*, 397 U.S. at 659-672 (discussing the First Amendment "tight rope" that must be traversed relative to tax exemptions for nonprofit religious organizations).

Plaintiffs see no difference between their efforts to run the for-profit K&L construction business in a manner consistent with religious principles and a traditional nonprofit, religious organization. Most recently, in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, __U.S.__, 132 S.Ct. 694 (Jan. 11, 2012), the Supreme Court recognized a fine line between religious and secular associations. First Amendment analysis for a religious organization, such as the Lutheran Church, was found to be different than the analysis that would be used relative to, for example, a labor union or social club. *Id*. at 706. The high court distinguished between teachers with a formal religious imprimatur and lay teachers. A religious exemption from compliance with the Americans with Disabilities Act was applied to the "called"

15

teacher, despite the fact that all teachers were performing the same duties at the same religious school.  Thus, a corporation that has primarily a secular purpose, such as construction, can be distinguished from a "religious" corporation (as defined by statute).

Lastly, even if in practice the law incidentally impacts Plaintiffs' religious beliefs (or prefers those who do not hold such religious convictions), it does not necessarily follow that Plaintiffs have been impermissibly burdened.  *See City of Boerne v. Flores*, 521 U.S. 507, 535 (1997).  The law is not so narrowly drawn as to "target" Plaintiffs' religious beliefs.  The mandate applies to a broader range of contraception than just the abortifacients Plaintiffs' find objectionable.

For these reasons, there is a substantial likelihood the ACA contraception mandate will be found to be a neutral law of general applicability that only incidentally burdens Plaintiffs' religious exercise.  Therefore, at this juncture, the Court will not address Plaintiffs' assertions that the mandate substantially burdens their free exercise of religion.

2.  RFRA

RFRA prohibits the federal government from substantially burdening "a person's" exercise of religion, "even if the burden results from a rule of general applicability" (§ 2000bb-1(a)), except when the government can "demonstrat[e] that application of the burden to the person-(1) [furthers] a compelling governmental interest; and (2) is the least restrictive means of furthering that . . . interest," (42 U.S.C. § 2000bb-1(b)).  RFRA potentially affords Plaintiffs greater protection than the First Amendment because the mandate must withstand strict scrutiny—the compelling interest test.  Accordingly, during oral argument the parties focused exclusively on the RFRA claim.

a.   The Applicability of RFRA

By its terms, RFRA is applicable to "persons." 42 U.S.C. § 2000bb-1(b). Defendants argue that K&L, as a secular, for-profit corporation, cannot exercise religion. Defendants further observe that the ACA mandate applies only to group health plans[13] and health insurance issuers, not individuals or corporations, unless self-insured (42 U.S.C. § 300gg-13(a)). Plaintiffs counter that, pursuant to 1 U.S.C. § 1, in determining the meaning of any statute, a corporation is a "person" unless the context indicates otherwise.[14]

The Kortes, obviously, are "persons," and, as already discussed, because K&L is a closely held S corporation, the Kortes fall within the ambit of RFRA.  K&L also qualifies as a "person" under RFRA.  Again, this is consistent with the fact that religious institutions have long been organized as corporations (*see Citizens United v. Federal Election Commission*, __U.S.__, 130 S.Ct. 876, 926-929 (2010) ((Scalia, J., concurring; joined by Alito, J., and Thomas, J.)), and with the notion that corporations can engage in activities to advance a belief system (*see generally National Association for the Advancement of Colored People v. Button*, 371 U.S. 415, 428-430 (1963)).  This sort of symbiotic relationship is not inconsistent with the advancement of a belief system.  However, the RFRA "substantial burden" inquiry makes clear that business forms and so-called "legal fictions" cannot be entirely ignored—in this situation, they are dispositive.

---

[13] A group health plan is legally distinct from the company that sponsors it.  29 U.S.C. § 1132(d).

[14] "[W]e do not assume that a statutory word is used as a term of art where that meaning does not fit. Ultimately, context determines meaning, *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961), and we "do not force term-of-art definitions into contexts where they plainly do not fit and produce nonsense," *Gonzales v. Oregon,* 546 U.S. 243, 282, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) (SCALIA, J., dissenting)."  *Johnson v. United States,* __U.S.__, 130 S.Ct. 1265, 1270 (2010).

App.  017

b.   <u>Substantial Burden</u>

Plaintiffs must initially show a substantial burden on their religious beliefs.  *See Gonzales v. O Centro Espirita Beneficent Uniao do Vegetal*, 546 U.S. 418, 429 (2006).

While neither dispositive nor determinative, the Court again notes the Plaintiffs' current health insurance plan covers the very preventive health services they seek to enjoin. There is a palpable inconsistency in claiming the ACA contraception mandate substantially burdens their religious beliefs while they currently maintain the same coverage in their existing pre-ACA health plan.

Plaintiffs claim that the ACA contraception coverage mandate forces them to choose between adhering to their religious beliefs and paying "ruinous" penalties for non-compliance.  K&L foresees losing their employees' goodwill, and being placed at a competitive disadvantage in the business marketplace.  During oral argument, Plaintiffs emphasized that they do not seek to impose their religious beliefs upon others; rather, they just do not want to be forced to foster or sponsor a plan that is contrary to their religious beliefs.[15]  As evidence that the government recognizes the substantial burden the mandate imposes, Plaintiffs cite the current exemption for nonprofit religious employers (76 Fed. Reg. 46621, 46626 (Aug. 3, 2011)), and the temporary "safe harbor" from enforcement afforded to non-grandfathered group health plans sponsored by nonprofit organizations with religious objections to contraception coverage (77 Fed. Reg. 8725, 8726-8727 (Feb. 15, 2012)).

Defendants do not challenge the sincerity of the Kortes' religious beliefs, but they do question the burden imposed under the mandate, particularly in light of the fact that K&L's

---

[15] Under the RFRA, "exercise of religion" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *See* 42 U.S.C. § 2000bb–2 (defining "exercise of religion" as defined in 42 U.S.C. § 2000cc–5).

App.  018

current insurance plan covers contraception. From Defendants' perspective, any burden is *de minimus* and too attenuated to trigger strict scrutiny. This Court agrees, albeit for more nuanced reasons.

In *Wisconsin v. Yoder*, 406 U.S. 205 (1972), a compulsory school-attendance law was found to violate the Free Exercise Clause because parents were forced to choose between endangering their salvation and criminal penalties (a fine of not less than $5, nor more than $50, and imprisonment for up to three months). In *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707 (1981), the plaintiff was denied unemployment benefits after he felt compelled to leave his job in a foundry because his religious beliefs. The tenets of his religion forbade his involvement in the production of weapons, and his employer had just started manufacturing military tank parts. The Supreme Court explained that, where the receipt or denial of an important benefit is conditioned upon conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and violate his beliefs, a burden upon religion exists. *Id*. at 717-718. *Sherbert v. Verner*, 374 U.S. 398 (1963), similarly illustrates that the pressure does not have to be direct. In *Sherbert*, a Free Exercise Clause violation was found relative to an individual whose religious beliefs prevented work on Saturdays and consequently disqualified that person from state unemployment compensation benefits, which required one to accept work when offered.

In *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 760-761 (7th Cir. 2003), relative to the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, the Court of Appeals for the Seventh Circuit looked to RFRA and Free Exercise precedents and concluded that the burden *must* be "substantial" to trigger strict scrutiny:

App.  019

> [I]n the context of RLUIPA's broad definition of religious exercise, a . . .
> regulation that imposes a substantial burden on religious exercise is one
> that necessarily bears direct, primary and fundamental responsibility for
> rendering religious exercise . . . effectively impracticable.

*Civil Liberties for Urban Believers*, 342 F.3d at 761.  *See also Koger v. Bryan*, 523 F.3d 789,

799 (7th Cir. 2008) (looking to *Thomas*, 450 U.S. at 718, to define "effectively impracticable").

From this Court's perspective, the ACA mandate (and its penalty/tax) will not be directly,

primarily and fundamentally responsible for rendering the Kortes' adversity to abortifacients

effectively impracticable.

Any inference of support for contraception stemming from complying with the

neutral and generally applicable mandate is a *de minimus* burden. It appears that Plaintiffs'

objection presupposes that an insured will actually use the contraception coverage.   Even

assuming that there is a substantial likelihood that a K&L employee will do so, at that point the

connection between the government regulation and the burden upon the Kortes' religious beliefs

is too distant to constitute a substantial burden.

Plaintiffs see their situation as being analogous, if not identical, to *Yoder*, *Thomas*

and *Sherbert*.   However, in *Yoder*, *Thomas* and *Sherbert* individuals *personally* faced a choice,

even when the pressure was indirect.   K&L is not a person and only reflects the Kortes' religious

beliefs.   The fact that a "corporate veil" (regardless of how thin) stands between the Kortes and

K&L, and another legal "veil" is between K&L and the group health plan, cannot be ignored.

In *U.S. v. Lee,* 455 U.S. 252, 261 (1982), the Amish plaintiff was self-employed

and did not qualify for a religious exemption from paying social security taxes.   Social Security

runs counter to the Amish religious belief in providing for themselves.   Although Lee involved a

self-employed person, the Supreme Court still recognized that, "[w]hen followers of a particular

sect enter into commercial activity as a matter of choice, the limits they accept on their own

App.  020

conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity." Similarly, by assuming the corporate form, the Kortes chose to accept the limitations of that form. Plaintiffs would rather obliterate any distinction between business entities and individuals. Specific to the ACA contraception coverage mandate, two other district courts have acknowledged how an individual can become distanced by what are often characterized as "legal fictions.

In *Tyndale House Publishers, Inc. v. Sebelius*, __F.Supp.2d __, 2012 WL 5817323 at *13 (D.D.C. Nov. 16, 2012), the plaintiff prevailed; a substantial burden was found and a preliminary injunction was issued. Nevertheless, the district court considered it a "crucial distinction" that the plaintiff corporation was self-insured, "thereby removing one of the 'degrees' of separation." *Id.* The court in *Tyndale* was attempting to distinguish *O'Brien v. United States Department of Health and Human Services*, __F.Supp.2d __, 2012 WL 4481208 (E.D. Mo. Sept. 28, 2012), where a secular, for-profit limited liability corporation was contributing to a health insurance plan. In *O'Brien*, the district court concluded: "RFRA does not protect against the slight burden on religious exercise that arises when one's money circuitously flows to support the conduct of other free-exercise-wielding individuals who hold religious beliefs that differ from one's own." *Id*. at *6.[16]

Because this Court does not perceive that the ACA contraception mandate imposes a substantial burden on Plaintiffs' free exercise of religion, the Court must find that Plaintiffs have failed to satisfy their burden, which leads to the conclusion that Plaintiffs do not

---

[16] During oral argument, Plaintiffs made much of the fact that the district court's order in *O'Brien* had just been stayed pending appeal, in effect granting the plaintiff corporation a preliminary injunction. *O'Brien v. United States Department of Health and Human Services*, No. 12-3357 (8th Cir. Nov. 28, 2012). Plaintiffs seem to consider the appellate court's one-sentence order as being tantamount to a holding that a substantial burden and successful RFRA claim had been found, which remains to be seen.

App.  021

have a reasonable likelihood of success on the merits of their RFRA claim.   Consequently, no further analysis of the RFRA claim is necessary.

### III.  Conclusion

For the reasons stated, the Court finds that Plaintiffs Cyril B. Korte, Jane E. Korte, and Korte & Luitjohan Contractors, Inc., have failed to show a reasonable likelihood of success on the merits of either their Free Exercise Clause or RFRA claims, which is necessary to secure a preliminary injunction.  In *Legatus v. Sebelius*, __F.Supp.2d __, 2012 WL 5359630 at *14 (E.D. Mich. Oct. 31, 2012), the district court concluded that, although neither party had failed to show a substantial likelihood of success on the merits, because of the possibility of serious harm to the plaintiffs' religious exercise, the balance tipped in favor of an injunction. The Supreme Court, however, has cautioned that, "[i]ssuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with [the] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Resources Defense Council, Inc*. 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (emphasis added)).  Therefore, Plaintiffs' motion for a preliminary injunction (Doc. 6) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  December 14, 2012**

s/ *Michael J. Reagan*
_____
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**

App.  022

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

December 28, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-3841

| | |
|---|---|
| CYRIL B. KORTE, et al., | Appeal from the |
| *Plaintiffs-Appellants,* | United States District Court for the Southern District of Illinois. |
| *v.* | |
| | No. 3:12-CV-01072-MJR |
| KATHLEEN SEBELIUS, in her official capacity as the Secretary of the United States Department of Health and Human Services, et al., | Michael J. Reagan, *Judge.* |
| *Defendants-Appellees.* | |

# O R D E R

The following are before the court:

1.   PLAINTIFFS-APPELLANTS' EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL BEFORE JANUARY 1, 2013, filed on December 18, 2012, by counsel for the appellants.

2.   OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL, filed on December 21, 2012, by counsel for the appellees.

App.  023

3.     PLAINTIFFS-APPELLANTS' REPLY IN SUPPORT OF THEIR EMERGENCY
         MOTION FOR AN INJUNCTION PENDING APPEAL BEFORE JANUARY 1,
         2013, filed December 21, 2012, by counsel for the appellants.

Cyril and Jane Korte and their construction company, Korte & Luitjohan Contractors, Inc. ("K & L Contractors"), appeal the denial of their motion for a preliminary injunction against the enforcement of provisions of the Patient Protection and Affordable Care Act ("ACA") and related regulations requiring that K & L Contractors purchase an employee health-insurance plan that includes no-cost-sharing coverage for contraception and sterilization procedures. *See* 42 U.S.C. § 300gg-13(a)(4); 77 Fed. Reg. 8725 (Feb. 15, 2012). They have moved for an injunction pending appeal. *See* FED. R. APP. P. 8. For the reasons that follow, the motion is granted.

The record at this stage of the proceedings is necessarily limited, but the parties do not substantially disagree about the facts.  Cyril and Jane Korte own K & L Contractors, a construction firm with approximately 90 full-time employees. About 70 of their employees belong to a union, which sponsors their health-insurance plan; K & L Contractors provides a group health-insurance plan for the remaining 20 nonunion employees. The Kortes are Roman Catholic, and they seek to manage their company in a manner consistent with their Catholic faith, including its teachings regarding the sanctity of human life, abortion, contraception, and sterilization. In August 2012 they discovered that the company's current health-insurance plan includes coverage for contraception. The plan renewal date is January 1, 2013. The Kortes want to terminate this coverage and substitute a health plan (or a plan of self-insurance) that conforms to the requirements of their faith. The ACA's preventive-care provision and implementing regulations prohibit them from doing so.

More specifically, as relevant here, the ACA requires nongrandfathered and nonexempt group health-insurance plans to cover certain preventive health services without cost-sharing, *see* 42 U.S.C. § 300gg-13(a)(4), and regulations promulgated by the United States Department of Health and Human Services ("HHS") specify that the required coverage must include all FDA-approved contraceptive methods and sterilization procedures, *see* 77 Fed. Reg. 8725 (Feb. 15, 2012) ("the contraception mandate" or "the mandate"). This includes oral contraceptives with abortifacient effect (such as the "morning-after pill") and intrauterine devices. *See id.*; OFFICE OF WOMEN'S HEALTH, FOOD & DRUG ADMIN., BIRTH CONTROL GUIDE 10-12, 16-20 (2012), http://www.fda.gov/downloads/ForConsumers/ByAudience/ForWomen/FreePublications/UCM282014.pdf.

The contraception mandate takes effect starting in the first plan year after August 1, 2012. 77 Fed. Reg. 8725-26. For the Kortes and their company, that date is January 1, 2013. Employers who do not comply are subject to enforcement actions and substantial financial

penalties. *See* 29 U.S.C. § 1132(a); 26 U.S.C. § 4980D(a), (b) ($100 per day per employee for noncompliance with coverage provisions); 26 U.S.C. § 4980H (approximately $2,000 per employee annual tax assessment for noncompliance). The Kortes estimate that for K & L Contractors, the penalties could be as much as $730,000 per year, an amount that would be financially ruinous for their company and for them personally.

On October 9, 2012, the Kortes and K & L Contractors (collectively, "the Kortes") filed suit against HHS Secretary Kathleen Sebelius seeking declaratory and injunctive relief against the enforcement of the contraception mandate, alleging that it violates their rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1; the First Amendment's Free Exercise, Establishment, and Speech Clauses; the Fifth Amendment's Due Process Clause; and the Administrative Procedure Act, 5 U.S.C. §§ 553(b)-(c), 706(2)(A), (D). They immediately moved for a preliminary injunction. On December 14, 2012, the district court denied the motion. On December 17, 2012, the Kortes appealed, *see* 28 U.S.C. § 1292(a)(1), and the next day they filed an emergency motion for an injunction pending appeal. For purposes of the motion, they rely solely on their RFRA claim.

We evaluate a motion for an injunction pending appeal using the same factors and "sliding scale" approach that govern an application for a preliminary injunction. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547-48 (7th Cir. 2007). The Kortes must establish that they have "(1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011); *see also Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012), *cert. denied*, No. 12-318, 2012 WL 4050487 (U.S. Nov. 26, 2012). Once the threshold requirements are met, the court weighs the equities, balancing each party's likelihood of success against the potential harms. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008); *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992). The more the balance of harms tips in favor of an injunction, the lighter the burden on the party seeking the injunction to demonstrate that it will ultimately prevail. *Abbott Labs.*, 971 F.2d at 12. In other words, the sliding-scale approach requires us "simply to weigh[] [the] harm to a party by the merit of his case." *Cavel*, 500 F.3d at 547.

We conclude that the Kortes have established both a reasonable likelihood of success on the merits and irreparable harm, and that the balance of harms tips in their favor. RFRA prohibits the federal government from imposing a "substantial[] burden [on] a person's exercise of religion even if the burden results from a rule of general applicability" *unless* the government demonstrates that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b). This is the strict-scrutiny test

established in *Sherbert v. Verner*, 374 U.S. 398 (1963), for evaluating claims under the Free Exercise Clause. It was displaced by *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), but Congress codified it in RFRA. *See Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 424 (2006); *River of Life Kingdom Ministries v. Village of Hazel Crest, Ill.*, 611 F.3d 367, 379 (7th Cir. 2010) (Sykes, J., dissenting). It is an exacting standard, and the government bears the burden of satisfying it.

The Kortes contend that the contraception mandate substantially burdens their exercise of religion by requiring them, on pain of substantial financial penalties, to provide and pay for an employee health plan that includes no-cost-sharing coverage for contraception, sterilization, and related medical services that their Catholic religion teaches are gravely immoral. They further contend that the mandate fails RFRA's strict-scrutiny requirement because the government's interest in making contraception and sterilization accessible on a cost-free basis is not sufficiently strong to qualify as compelling, and that coercing religious objectors to provide this coverage is not the least restrictive means of achieving that objective. They point out that some health plans are either grandfathered or exempt from the mandate, illustrating that the interest served by the mandate is far from compelling. And they argue that the government has other methods of furthering its interest in free access to contraception without imposing this burden on their religious liberty—for example, by offering tax deductions or credits for the purchase of contraception or incentives to pharmaceutical companies or medical providers to offer the services.

In response, the government's primary argument is that because K & L Contractors is a secular, for-profit enterprise, no rights under RFRA are implicated at all. This ignores that Cyril and Jane Korte are also plaintiffs. Together they own nearly 88% of K & L Contractors. It is a family-run business, and they manage the company in accordance with their religious beliefs. This includes the health plan that the company sponsors and funds for the benefit of its nonunion workforce. That the Kortes operate their business in the corporate form is not dispositive of their claim. *See generally Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876 (2010). The contraception mandate applies to K & L Contractors as an employer of more than 50 employees, and the Kortes would have to violate their religious beliefs to operate their company in compliance with it.

The government also argues that any burden on religious exercise is minimal and attenuated, relying on a recent decision by the Tenth Circuit in *Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294 (10th Cir. Dec. 20, 2012). *Hobby Lobby*, like this case, involves a claim for injunctive and declaratory relief against the mandate brought by a secular, for-profit employer. On an interlocutory appeal from the district court's denial of a preliminary injunction, the Tenth Circuit denied an injunction pending appeal, noting that "the particular burden of which plaintiffs complain is that funds, which plaintiffs will contribute

to a group health plan, might, after a series of independent decisions by health care providers and patients covered by [the corporate] plan, subsidize *someone else's* participation in an activity condemned by plaintiff[s'] religion." *Id.* at 7 (quoting *Hobby Lobby Stores, Inc. v. Sebelius,* 870 F. Supp. 2d 1278, 1294 (W.D. Okla. 2012)). With respect, we think this misunderstands the substance of the claim. The religious-liberty violation at issue here inheres in the *coerced coverage* of contraception, abortifacients, sterilization, and related services, *not*—or perhaps more precisely, *not only*—in the later purchase or use of contraception or related services.

We note that the Eighth Circuit apparently disagrees with our colleagues in the Tenth. In a similar lawsuit, the Eighth Circuit granted a motion for an injunction pending appeal, *see O'Brien v. U.S. Dep't of Health & Human Servs.,* No. 12-3357 (8th Cir. Nov. 28, 2012), albeit without discussion. We note as well that on December 26, 2012, Justice Sotomayor, as Circuit Justice for the Tenth Circuit, issued an in-chambers decision in *Hobby Lobby* denying the plaintiffs' motion for an injunction pending appellate review. *Hobby Lobby Stores, Inc. v. Sebelius,* No. 12A644, 2012 WL 6698888 (Sotomayor, Circuit Justice Dec. 26, 2012). But the "demanding standard" for issuance of an extraordinary writ by the Supreme Court, *id.* at *1, differs significantly from the standard applicable to a motion for a stay or injunction pending appeal in this court. As Justice Sotomayor noted, the entitlement to relief must be "'indisputably clear.'" *Id.* (quoting *Lux v. Rodrigues,* 131 S. Ct. 5, 6 (Roberts, Circuit Justice 2010)).[1]

Finally, the government emphasizes the fact that K & L Contractors' current employee health plan covers contraception. But it is well-established that a religious believer does not, by inadvertent nonobservance, forfeit or diminish his free-exercise rights. *See Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012) ("a sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance").

In short, the Kortes have established a reasonable likelihood of success on their claim that the contraception mandate imposes a substantial burden on their religious exercise. As such, the burden will be on the government to demonstrate that the contraception mandate is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C.

---

[1] Four district courts have granted preliminary injunctions or temporary restraining orders in similar cases. *Conestoga Wood Specialities Corp. v. Sebelius*, No. 12-6744 (E.D. Pa. Dec. 28, 2012); *Tyndale House Publishers v. Sebelius,* Civil Action No. 12-1635 (RBW), 2012 WL 5817323 (D.D.C. Nov. 16, 2012); *Legatus v. Sebelius,* No. 12-12061, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012); *Newland v. Sebelius,* Civil Action No. 1:12-cv-1123-JLK, 2012 WL 3069154 (D. Colo. July 27, 2012). A second district court in this circuit denied preliminary injunctive relief in a similar case. *See Grote Indus., LLC v. Sebelius,* No. 4:12-cv-00134-SEB-DML (S.D. Ind. Dec. 27, 2012).

§ 2000bb-a(1), (b). Given this high bar, we think the Kortes have established a reasonable likelihood of success on their RFRA claim. At this stage of the proceedings, the government invokes only a generalized interest in "ensuring that employees and their families have access to recommended preventative health services," and somewhat more specifically, "ensur[ing] that decisions about whether to use contraception and which form to use are made by a woman and her doctor—not by her employer or insurer." Whether these interests qualify as "compelling" remains for later in this interlocutory appeal; the government has not advanced an argument that the contraception mandate is the least restrictive means of furthering these interests. Reserving judgment for our plenary consideration of the appeal, we conclude at this early juncture that the Kortes have established a reasonable likelihood of success on their RFRA claim.

They have also established irreparable harm. Without an injunction pending appeal, the Kortes will be forced to choose between violating their religious beliefs by maintaining insurance coverage for contraception and sterilization services contrary to the teachings of their faith and subjecting their company to substantial financial penalties. RFRA protects the same religious liberty protected by the First Amendment, and it does so under a more rigorous standard of judicial scrutiny; the loss of First Amendment rights "for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *Alvarez*, 679 F.3d at 589. In this context "quantification of injury is difficult and damages are therefore not an adequate remedy." *Flower Cab Co. v. Petitte*, 685 F.2d 192, 195 (7th Cir. 1982).

We also conclude that the balance of harms tips strongly in the Kortes's favor. An injunction pending appeal temporarily interferes with the government's goal of increasing cost-free access to contraception and sterilization. That interest, while not insignificant, is outweighed by the harm to the substantial religious-liberty interests on the other side. The cost of error is best minimized by granting an injunction pending appeal.

Accordingly, IT IS ORDERED that the motion for an injunction pending appeal is GRANTED. The defendants are enjoined pending resolution of this appeal from enforcing the contraception mandate against the Kortes and K & L Contractors.

ROVNER, *Circuit Judge*, dissenting.   I would deny the appellants' emergency request for temporary injunctive relief.  I do not believe that the appellants have demonstrated either a reasonable likelihood of success on the merits of their appeal or irreparable harm in the absence of an injunction pending the resolution of the appeal.

Although the Kortes contend that complying with the Patient Protection and Affordable Care Act's insurance mandate violates their religious liberties, they are removed

by multiple steps from the contraceptive services to which they object.  First, it is the corporation rather than the Kortes individually which will pay for the insurance coverage. The corporate form may not be dispositive of the claims raised in this litigation, but neither is it meaningless:  it does separate the Kortes, in some real measure, from the actions of their company.  Second, the firm itself will not be paying directly for contraceptive services. Instead, their company will be required to purchase insurance which covers a wide range of health care services.  It will be up to an employee and her physician whether she will avail herself of contraception, and if she does, it will be the insurer, rather than the Kortes, which will be funding those services.  In the usual course of events, an employer is not involved in the delivery of medical care to its employee or even aware (by virtue of physician-patient privilege and statutory privacy protections) of what medical choices the employee is making in consultation with her physician; only the employee, her physician, and the insurer have knowledge of what services are being provided.  What the Kortes wish to do is to preemptively declare that their company need not pay for insurance which covers particular types of medical care to which they object, despite the fact that neither the company nor its owners are involved with the decision to use particular services, nor do they write the checks to pay the providers for those services.  *See Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294, Order at 7 (10th Cir. Dec. 20, 2012) (quoting *Hobby Lobby Stores, Inc. v. Sebelius*, 870 F. Supp. 2d 1278, 1294 (W. D. Okla. 2012) ("[T]he particular burden of which plaintiffs complain is that funds, which plaintiffs will contribute to a group health plan, might, after a series of independent decisions by health care providers and patients covered by [the corporate] plan, subsidize *someone else's* participation in an activity that is condemned by plaintiff[s'] religion.  Such an indirect and attenuated relationship appears unlikely to establish the necessary 'substantial burden.'") (emphasis in original)), *application for injunction denied by Circuit Justice*, 2012 WL 6698888 (U.S. Dec. 26, 2012) (Sotomayor, J.). If an employer has this right, it is not clear to me what limits there might be on the ability to limit the insurance coverage the employer provides to its employees, for any number of medical services (or decisions to use particular medical services in particular circumstances) might be inconsistent with an employer's  (or its individual owners') individual religious beliefs.  In short, the Kortes have not shown that complying with the insurance mandate substantially burdens the free exercise of their religious rights, in violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1.

I am also dubious of the notion that the Kortes will be irreparably harmed in the absence of a temporary injunction relieving them of the obligation to comply with the mandate to purchase insurance covering contraceptive services.  First, the insurance plan currently in effect for their company's non-union employees, which plan the company voluntarily entered into, already covers the relevant contraceptive services.  The Kortes aver that they were unaware of this fact until shortly before they filed this litigation.  The limited record before us does not reveal how long this has been going on, nor does it tell us what

steps, if any, the Kortes took in the past to determine what services would be covered by the insurance their firm acquired for its non-union employees.  I accept that their prior, inadvertent failure to act in compliance with their professed religious beliefs does not necessarily defeat the claims that they are pursuing in this litigation.  *See Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012) ("a sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance").  But the fact that the Kortes' company is already voluntarily (if inadvertently) paying for the type of insurance coverage to which they object – for at least the past year, and possibly longer – suggests that they will not be irreparably harmed by continuing to pay for the same coverage in compliance with the Affordable Care Act while this appeal is being resolved.  Second, the regulations imposing the insurance mandate were issued in August 2011.  As of that time, the Kortes knew that their company would be required to fund insurance coverage that included contraceptive services.  Yet, they waited for more than a year to file this suit and seek a preliminary injunction relieving their firm of the duty to comply with the statute and the implementing regulations.  If the insurance mandate poses as dire of a choice as the Kortes aver that it does (to act in violation of their religious beliefs, or pay a hefty fine for failing to comply with the statutory mandate), then they were obliged to take more prompt action than they did.  Their belated discovery that their firm was already voluntarily providing to its employees coverage for services they claim they cannot countenance, coupled with their tardy decision to file suit seeking injunctive relief relieving their firm from the insurance mandate, suggests that they will not be irreparably harmed if they are denied preliminary relief while the merits of this appeal are being resolved.

I respectfully dissent.

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CYRIL B. KORTE, et al.,**

          Plaintiffs,

v.

**UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICES,
et al.,**

          Defendants.

**CASE NO. 3:12-CV-01072-MJR-PMF**

_____/

## DECLARATION OF CYRIL B. KORTE

I, Cyril B. Korte, an adult resident of the State of Illinois, make the following declaration, pursuant to 28 U.S.C. § 1746, based on my personal knowledge, unless otherwise noted:

1.     Korte & Luitjohan Contractors, Inc. is a family owned, full-service construction contractor serving Central and Southern Illinois for over fifty years.  Its main offices are located at 12052 Highland Road, Highland, Illinois, which is in Madison County.  It is incorporated in the State of Illinois.

2.     My wife, Jane, and I each hold 43.674% ownership in Korte & Luitjohan Contractors, Inc. and, as equal shareholders, together we own a controlling interest in the company.

3.     I am the President of Korte & Luitjohan Contractors, Inc., and my wife, Jane, is the Secretary.  We are the only Directors of Korte & Luitjohan Contractors, Inc., and together we set the policies governing the conduct of all phases of the company.

EXHIBIT  A

App.  031

4.      I hold to the teachings, values, and mission of the Catholic Church, including the Church's teaching regarding the sanctity of human life from conception to natural death. I believe that actions intended to terminate an innocent human life by abortion are gravely sinful. I also adhere to the Catholic Church's teaching regarding the immorality of artificial means of contraception and sterilization.

5.      I seek to manage and operate Korte & Luitjohan Contractors, Inc. in a way that reflects my Catholic faith. Also, in furtherance of my Catholic faith, I strongly support, financially and otherwise, Catholic fundraisers and other events, including, but not limited to, the STYDEC Ghana project, restoration of my parish church, annual church picnic, and annual parish school auction.

6.      Korte & Luitjohan Contractors, Inc. currently has about ninety full-time employees. About seventy of those employees belong to unions and about twenty of those employees are non-union. Korte & Luitjohan Contractors, Inc. provides a group health insurance plan only for our non-union employees. Union employees are covered by separate health insurance through their respective unions over which we have no control.

7.      Like other non-cash benefits provided by Korte & Luitjohan Contractors, Inc., I consider the provision of employee health insurance an integral component of furthering the company's mission and values.

8.      I understand that the Defendants in this lawsuit promulgated and implemented a mandate that requires group health plans, such as the plan provided by Korte & Luitjohan Contractors, Inc., to include coverage, without cost sharing, for "all Food and Drug Administration-approved contraceptive methods, sterilization procedures and patient education and counseling for all women with reproductive capacity" in plan years beginning on or after

2

App. 032

August 1, 2012.  (Hereafter "Mandate".)  I also understand that FDA-approved contraceptive methods include abortion-inducing drugs.

9.     I understand that Korte & Luitjohan Contractors, Inc. is not exempt from the Mandate.  In particular, I understand that we do not fall within the "religious employer" exemption, as that term is defined by the Mandate, and we do not fall within any "temporary enforcement safe harbor" provided by Defendants to certain non-profit entities.

10.     Pursuant to my religious faith, I have established ethical guidelines for Korte & Luitjohan Contractors, Inc., that explain that we cannot arrange for, pay for, provide, facilitate, or otherwise support employee health plan coverage for contraceptives, sterilization, abortion, abortion-inducing drugs, or related education and counseling, except in the limited circumstances where a physician certifies that certain sterilization procedures or drugs commonly used as contraceptives are being prescribed with the intent to treat certain medical conditions, not with the intent to prevent or terminate pregnancy.  A true and correct copy of our ethical guidelines is attached to this declaration.

11.     As was discovered in or about August 2012, Korte & Luitjohan Contractors, Inc.'s current group health plan includes coverage for contraceptives, sterilization, and abortion, which is an error that is contrary to what I want based on my religious beliefs and contrary to our company's ethical guidelines.  We are investigating ways to obtain employee health insurance coverage that complies with my Catholic faith and the company's ethical guidelines.

12.     To operate and manage Korte & Luitjohan Contractors, Inc. consistent with my Catholic faith and values, I want to be able to provide high quality, broad coverage health insurance for my non-union employees that excludes coverage for things I believe are morally wrong for me and my company to arrange for, pay for, provide, facilitate, or otherwise support.

3

App. 033

13.    I understand that on January 1, 2013, which is the renewal date for our group health plan, the Mandate will require Korte & Luitjohan Contractors, Inc. to arrange for, pay for, provide, facilitate, or otherwise support a group health plan that includes contraceptives, including abortion-inducing drugs, sterilization and related patient education and counseling and will prevent us from obtaining an employee health plan that comports with my faith and the company's ethical guidelines.

14.    I understand that it takes about sixty days for us to explore whatever options, if any, are available to us to have a new health plan in place by January 1, 2013. Thus, we are in need of immediate relief from the Mandate to allow us time to obtain group health coverage by January 1, 2013, that complies with our religious beliefs and to prevent a coverage lapse.

15.    I understand that if my company fails to comply with the Mandate or drops its employee group health coverage, then my company could be subjected to significant annual fines and/or penalties payable to the federal government.

16.    In addition to fines and penalties, stopping all health coverage for our non-union employees would have a severe impact on our ability to compete with other companies that do offer health coverage and would have severe consequences for our employees who would have to find expensive individual policies in the private marketplace.

17.    In my view, the Mandate requires me and my company to choose between (a) complying with the Mandate and violating our religious beliefs and (b) not complying with the Mandate and having to pay annual fines and penalties in order to conduct business consistent with our religious beliefs.

18.    In my view, the Mandate prevents me from following the dictates of my Catholic faith in the operation and management of Korte & Luitjohan Contractors, Inc., and it violates the

4

App. 034

religious-based principles and the ethical guidelines I have established for the company.

19.     In my view, the Mandate is violating my rights and those of my company, and the Mandate will continue to violate those rights unless we obtain immediate relief from this court.

I declare under penalty of perjury under the laws of the United States of America that the above statements are true and correct to the best of my knowledge.

Executed on October __9__, 2012, in Highland, Illinois.

_____ _Cyril B Korte_ [1]
Cyril B. Korte

---

[1] The declaration electronically filed with the court bears the scanned original signature of Cyril B. Korte. The original declaration, bearing the original signature, is being retained by his counsel in this action and is available for review on request by the court and counsel for Defendants.

App. 035

## Ethical Guidelines of Korte & Luitjohan Contractors, Inc.

1.       As adherents of the Catholic faith, we hold to the teachings of the Catholic Church regarding the sanctity of human life from conception to natural death.  We believe that actions intended to terminate an innocent human life by abortion, including abortion-inducing drugs, are gravely sinful.  We also adhere to the Catholic Church's teaching regarding the immorality of artificial means of contraception and sterilization.

2.       As equal shareholders who together own a controlling interest in Korte & Luitjohan Contractors, Inc., we wish to conduct the business of Korte & Luitjohan Contractors, Inc. in a manner that does not violate our religious faith and values.

3.       Accordingly, we and Korte & Luitjohan Contractors, Inc. cannot arrange for, pay for, provide, facilitate, or otherwise support employee health plan coverage for contraceptives, sterilization, abortion, abortion-inducing drugs, or related education and counseling, except in the limited circumstances where a physician certifies that certain sterilization procedures or drugs commonly used as contraceptives are being prescribed with the intent to treat certain medical conditions, not with the intent to prevent or terminate pregnancy, without violating our religious beliefs.


_____
Cyril B. Korte
President, Korte & Luitjohn Contractors, Inc.

_____9/27/2012_____
Date


_____
Jane E. Korte
Secretary, Korte & Luitjohn Contractors, Inc.

_____9/27/2012_____
Date


App.  036

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CYRIL B. KORTE, et al.,**

               Plaintiffs,

v.                                    **CASE NO. 3:12-CV-01072-MJR-PMF**

**UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICES,
et al.,**

               Defendants.

_____/

## DECLARATION OF JANE E. KORTE

    I, Jane E. Korte, an adult resident of the State of Illinois, make the following declaration, pursuant to 28 U.S.C. § 1746, based on my personal knowledge, unless otherwise noted:

    1.    Korte & Luitjohan Contractors, Inc. is a family owned, full-service construction contractor serving Central and Southern Illinois for over fifty years.  Its main offices are located at 12052 Highland Road, Highland, Illinois, which is in Madison County.  It is incorporated in the State of Illinois.

    2.    My husband, Cyril, and I each hold 43.674% ownership in Korte & Luitjohan Contractors, Inc. and, as equal shareholders, together we own a controlling interest in the company.

    3.    I am the Secretary of Korte & Luitjohan Contractors, Inc., and my husband, Cyril, is the President.  We are the only Directors of Korte & Luitjohan Contractors, Inc., and together we set the policies governing the conduct of all phases of the company.

EXHIBIT B

4.      I hold to the teachings, values, and mission of the Catholic Church, including the Church's teaching regarding the sanctity of human life from conception to natural death.   I believe that actions intended to terminate an innocent human life by abortion are gravely sinful. I also adhere to the Catholic Church's teaching regarding the immorality of artificial means of contraception and sterilization.

5.      I seek to manage and operate Korte & Luitjohan Contractors, Inc. in a way that reflects my Catholic faith.   Also, in furtherance of my Catholic faith, I strongly support, financially and otherwise, Catholic fundraisers and other events, including, but not limited to, the STYDEC Ghana project, restoration of my parish church, annual church picnic, and annual parish school auction.

6.      Korte & Luitjohan Contractors, Inc. currently has about ninety full-time employees.   About seventy of those employees belong to unions and about twenty of those employees are non-union.   Korte & Luitjohan Contractors, Inc. provides a group health insurance plan only for our non-union employees.   Union employees are covered by separate health insurance through their respective unions over which we have no control.

7.      Like other non-cash benefits provided by Korte & Luitjohan Contractors, Inc., I consider the provision of employee health insurance an integral component of furthering the company's mission and values.

8.      I understand that the Defendants in this lawsuit promulgated and implemented a mandate that requires group health plans, such as the plan provided by Korte & Luitjohan Contractors, Inc., to include coverage, without cost sharing, for "all Food and Drug Administration-approved contraceptive methods, sterilization procedures and patient education and counseling for all women with reproductive capacity" in plan years beginning on or after

App.  038

August 1, 2012. (Hereafter "Mandate".)  I also understand that FDA-approved contraceptive methods include abortion-inducing drugs.

9.     I understand that Korte & Luitjohan Contractors, Inc. is not exempt from the Mandate.  In particular, I understand that we do not fall within the "religious employer" exemption, as that term is defined by the Mandate, and we do not fall within any "temporary enforcement safe harbor" provided by Defendants to certain non-profit entities.

10.     Pursuant to my religious faith, I have established ethical guidelines for Korte & Luitjohan Contractors, Inc., that explain that we cannot arrange for, pay for, provide, facilitate, or otherwise support employee health plan coverage for contraceptives, sterilization, abortion, abortion-inducing drugs, or related education and counseling, except in the limited circumstances where a physician certifies that certain sterilization procedures or drugs commonly used as contraceptives are being prescribed with the intent to treat certain medical conditions, not with the intent to prevent or terminate pregnancy.

11.     As was discovered in or about August 2012, Korte & Luitjohan Contractors, Inc.'s current group health plan includes coverage for contraceptives, sterilization, and abortion, which is an error that is contrary to what I want based on my religious beliefs and contrary to our company's ethical guidelines.  We are investigating ways to obtain employee health insurance coverage that complies with my Catholic faith and the company's ethical guidelines.

12.     To operate and manage Korte & Luitjohan Contractors, Inc. consistent with my Catholic faith and values, I want to be able to provide high quality, broad coverage health insurance for my non-union employees that excludes coverage for things I believe are morally wrong for me and my company to arrange for, pay for, provide, facilitate, or otherwise support.

13.     I understand that on January 1, 2013, which is the renewal date for our group

App.  039

health plan, the Mandate will require Korte & Luitjohan Contractors, Inc. to arrange for, pay for, provide, facilitate, or otherwise support a group health plan that includes contraceptives, including abortion-inducing drugs, sterilization and related patient education and counseling and will prevent us from obtaining an employee health plan that comports with my faith and the company's ethical guidelines.

14.     I understand that it takes about sixty days for us to explore whatever options, if any, are available to us to have a new health plan in place by January 1, 2013. Thus, we are in need of immediate relief from the Mandate to allow us time to obtain group health coverage by January 1, 2013, that complies with our religious beliefs and to prevent a coverage lapse.

15.     I understand that if my company fails to comply with the Mandate or drops its employee group health coverage, then my company could be subjected to significant annual fines and/or penalties payable to the federal government.

16.     In addition to fines and penalties, stopping all health coverage for our non-union employees would have a severe impact on our ability to compete with other companies that do offer health coverage and would have severe consequences for our employees who would have to find expensive individual policies in the private marketplace.

17.     In my view, the Mandate requires me and my company to choose between (a) complying with the Mandate and violating our religious beliefs and (b) not complying with the Mandate and having to pay annual fines and penalties in order to conduct business consistent with our religious beliefs.

18.     In my view, the Mandate prevents me from following the dictates of my Catholic faith in the operation and management of Korte & Luitjohan Contractors, Inc., and it violates the religious-based principles and the ethical guidelines I have established for the company.

4

App. 040

19.    In my view, the Mandate is violating my rights and those of my company, and the Mandate will continue to violate those rights unless we obtain immediate relief from this court.

I declare under penalty of perjury under the laws of the United States of America that the above statements are true and correct to the best of my knowledge.

Executed on October _9_, 2012, in Highland, Illinois.

_Jane E. Korte_                    1/
Jane E. Korte

---

1/ The declaration electronically filed with the court bears the scanned original signature of Jane E. Korte. The original declaration, bearing the original signature, is being retained by her counsel in this action and is available for review on request by the court and counsel for Defendants.

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 6756 | **DATE** | 1/3/2013 |
| **CASE TITLE** | Triune Health Group, Inc vs. United States Dept of Health & Human Services et al | | |

**DOCKET ENTRY TEXT**

The Court grants Plaintiffs' motion for a preliminary injunction [36].

■[ For further details see text below.]                                    Notices mailed by Judicial staff.

---

## STATEMENT

Before the Court is Plaintiffs' motion for a preliminary injunction. (R. 36, Inj. Mot.) Plaintiffs filed a memorandum of law supporting both their motion for preliminary injunction and in opposition to Defendants' motion to dismiss. (R. 37, Inj. Mem.) The Court addresses only the preliminary injunction at this time. For the following reasons, the Court grants Plaintiffs' motion.

### BACKGROUND

"Plaintiffs[] Christopher and Mary Anne Yep are ardent and faithful adherents of the Roman Catholic religion." (R. 21, Amend. Compl. ¶ 2.) The Yeps own and control Plaintiff Triune Health Group, Inc., a for-profit corporation. (*Id*. ¶¶ 3, 12.) Triune is a corporation that specializes in facilitating the re-entry of injured workers into the workforce. (*Id*. ¶ 19.)

The 2010 Patient Protection and Affordable Care Act ("the PPACA") included regulations mandating that employers include in their group health benefit plans coverage for preventative care for women that Plaintiffs deem "wholly at odds with their religious and moral values and sincere religious beliefs and sacred commitments." (*Id*. ¶ 5); *see also* 42 U.S.C. § 300gg-13(a)(4). Plaintiffs specifically believe that abortion, contraception (including abortifacients), and sterilization are "gravely wrong and sinful." (*Id*. ¶ 33.) "Plaintiffs believe that providing their employees with coverage for drugs and services that facilitate such immoral practices constitutes cooperation with evil that violates the laws of God." (*Id*. ¶ 34.) Under the PPACA's mandate, however, Triune would be required to provide a group health plan covering the full range of Food and Drug Administration approved contraceptive methods, sterilization procedures, and to provide education and counseling with respect to these matters for all women with reproductive capacity. (*Id*. ¶ 40); *see also* 42 U.S.C. § 300gg-13(a)(4); 45 C.F.R. § 147.130.

| | Courtroom Deputy Initials: | KF |
|---|---|---|

App. 042

The PPACA provides exemptions for religious employers and exempts some organizations through a "grandfathering" provision, however, Triune does not qualify for any exemption.  (*Id*. ¶¶ 43-45.)  Triune's health plan was due for renewal on January 1, 2013.  (*Id*. ¶ 47.)  According to Plaintiffs, they, therefore, must "either choose to comply with the federal mandate's requirements in violation of their religious beliefs, or pay ruinous fines that would have a crippling impact on their business and force them to shut down."  (*Id*. ¶ 53.)  As a result, Plaintiffs allege that the PPACA's mandate violates the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq* ("RFRA"), the First and Fifth Amendments of the United States Constitution, and the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*.

Triune's current group health plan includes coverage for contraceptives, sterilization, and abortion.  (Inj. Mem. at 9.)  According to Plaintiffs, this coverage is an error and contrary to what Plaintiffs want based on their religious beliefs.  (*Id*.)  Plaintiffs have been unable to find a group healthcare policy that comports with both the PPACA and their religious beliefs.  (*Id*. at 9-10.)  Plaintiffs, therefore, seek an injunction from the PPACA's mandate so that they may purchase an insurance policy that excludes coverage for drugs and services to which they object based on their religious convictions.  (Amend. Compl. ¶ 48.)

## LEGAL STANDARD

"To obtain a preliminary injunction, the moving party must demonstrate a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent the injunction." *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dept. Health,* 699 F.3d 962, 972 (7th Cir. 2012) (citing *Am. Civil Liberties Union of Ill. v. Alvarez,* 679 F.3d 583, 589-90 (7th Cir. 2012); *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006); *Joelner v. Village of Washington Park, Ill.*, 378 F.3d 613, 619 (7th Cir. 2004)).  "If the moving party makes this threshold showing, the court 'weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied.'" *Alvarez*, 679 F.3d at 589 (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011)).

## ANALYSIS

The Seventh Circuit recently granted a preliminary injunction pending appeal in favor of a for-profit employer challenging the PPACA's preventative care mandate on the same grounds as presented here.  *See Korte et al. v. Sebelius et al*., No. 12-3841 (7th Cir. Dec. 28, 2012).  The plaintiffs in *Korte*, as here, challenge the PPACA under the RFRA, the First and Fifth Amendments, and the Administrative Procedure Act.  Similar to Triune and the Yeps, the plaintiffs in *Korte* discovered this summer that the company's health insurance plan covered women's health services that contradict the owners' deeply-held religious beliefs, and therefore sought an injunction from the application of the PPACA in order to enroll in a conscience-compliant plan on January 1, 2013.  The Seventh Circuit concluded that the *Korte* plaintiffs established a reasonable likelihood of success on the merits and irreparable harm, with the balance of harms tipping in their favor.  In light of this binding precedent, the Court grants Triune's motion for a preliminary injunction.

App. 043